1  Steven R. Holguin (SBN 115768)
   steven@srholguin.com
2  Marisa R. Holguin (SBN 324299)
   marisa@srholguin.com
3  SR HOLGUIN, PC
   800 West 6th Street, Suite 788
4  Los Angeles, CA 90016
   Telephone: (213) 395-0956
5
   Attorneys for Defendants
6  International Longshore and Warehouse
   Union; and International Longshore
7  and Warehouse Union Local 13
8  David W. Kesselman (SBN 203838)
   dkesselman@kbslaw.com
9  Trevor V. Stockinger (SBN 226359)
   tstockinger@kbslaw.com
10 KESSELMAN BRANTLY STOCKINGER LLP
   1230 Rosecrans Ave., Suite 400
11 Manhattan Beach, CA 90266
   Telephone: (310) 307-4555
12 Facsimile: (310) 307-4570
13 Attorneys for Defendant
   International Longshore and
14 Warehouse Union Local 13

15                **UNITED STATES DISTRICT COURT**

16                **CENTRAL DISTRICT OF CALIFORNIA**

17

| | |
|---|---|
| 18  HARBOR PERFORMANCE | CASE NO. 2:20-cv-03251-PSG-MAA |
| 19  ENHANCEMENT CENTER, LLC, | *Honorable Philip S. Gutierrez* |
| 20                    Plaintiff, | **DEFENDANT ILWU AND ILWU** |
| 21          v. | **LOCAL 13'S JOINT MOTION TO DISMISS SECOND AMENDED** |
| 22  CITY OF LOS ANGELES HARBOR | **COMPLAINT** |
| 23  DEPARTMENT; CITY OF LOS ANGELES; INTERNATIONAL | |
| 24  LONGSHORE AND WAREHOUSE UNION; INTERNATIONAL | Date:        March 22, 2021 |
| 25  LONGSHORE AND WAREHOUSE UNION LOCAL 13; and EUGENE D. | Time:        1:30 p.m. Courtroom: 6A |
| 26  SEROKA, | |
| 27                    Defendants. | Complaint Filed:  April 7, 2020 |
| 28 | |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on March 22, 2021 at 1:30 p.m., Defendants International Longshore and Warehouse Union ("ILWU") and International Longshore and Warehouse Union Local 13 ("ILWU Local 13") (collectively "Union Defendants") will bring for hearing this Motion to Dismiss the Second Amended Complaint ("SAC") before the Honorable Philip S. Gutierrez in courtroom 6A at First Street Courthouse, 350 W. First Street, Los Angeles, California 90012.

Union Defendants, by and through their undersigned counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against Union Defendants in Plaintiff's SAC. All claims are barred by the *Noerr-Pennington* doctrine because they are based on the Union Defendants' Constitutionally-protected petitioning rights. Despite leave to amend, Plaintiff has failed to allege a cognizable exception to the *Noerr-Pennington* doctrine. The Sherman Act claim is also barred by the *Parker* immunity doctrine and the statutory labor exemption, and, in any case, is substantively deficient because not a single element of the claim is sufficiently alleged. The secondary boycott claim is also substantively deficient because it fails to allege actionable coercive threats.

This Motion is based on the attached memorandum of points and authorities, any matters of which this Court may take judicial notice, and such additional argument as may be presented at or before the hearing on this matter.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on January 4, 2021.

/ / /

/ / /

/ / /

/ / /

/ / /

DATED:  January 11, 2021

Respectfully submitted,

SR HOLGUIN, PC
KESSELMAN BRANTLY STOCKINGER LLP

By:     */s/ David W. Kesselman*
           David. W. Kesselman

Steven R. Holguin
Marisa R. Holguin
SR HOLGUIN, PC

David W. Kesselman
Trevor V. Stockinger
KESSELMAN BRANTLY STOCKINGER LLP

*Counsel for Defendant*
International Longshore and Warehouse Union
Local 13

SR HOLGUIN, PC

By:     */s/ Steven R. Holguin*
           Steven R. Holguin

Steven R. Holguin
Marisa R. Holguin
SR HOLGUIN, PC

*Counsel for Defendant*
International Longshore and Warehouse Union

## ATTESTATION OF CONCURRENCE IN FILING

Pursuant to Local Civil Rule 5-4.3.4, I hereby attest that Steven R. Holguin, on whose behalf this filing is jointly submitted, has concurred in this filing's content and has authorized me to file this document.

DATED:  January 11, 2021

KESSELMAN BRANTLY STOCKINGER LLP

By:     */s/ David W. Kesselman*
           David W. Kesselman

*Counsel for Defendant*
International Longshore and Warehouse Union
Local 13

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................ 2

ARGUMENT ..................................................................................... 4

I.   The *Noerr-Pennington* Doctrine Still Bars HPEC's Claims ....................... 4

    A.   The SAC Does Not Allege Claims Based on Conduct Independent of the Petitioning Behavior. ........................................ 6

    B.   The SAC Fails to Allege the Union Defendants Denied HPEC Access to the Board When it Acted in an Adjudicatory Manner. ..... 9

II.  The Union Defendants' Conduct is Protected by the *Parker* Doctrine. .... 12

III. Union Defendants are Also Immune from Sherman Act Liability Under the Statutory Labor Exemption. ...................................... 13

IV.  The Sherman Act Section 1 Claim Also Fails on Substantive Grounds.... 14

    A.   The SAC Fails to Plausibly Allege A Refusal to Deal or Denial of an Essential Facility. ........................................... 15

    B.   The SAC Fails to Plausibly Allege an Agreement. ........................ 16

    C.   The Complaint Fails to Plausibly Allege Facts Showing Injury to Competition in a Relevant Market.................................. 19

        1.   The Allegations Do Not Define a Relevant Market.............. 19

        2.   The Allegations Fail to Allege Harm to Competition. .......... 20

    D.   The Allegations Fail to Plausibly Allege Antitrust Injury.............. 22

V.   The NLRA Claims Also Fail on Substantive Grounds. ............................ 23

VI.  This Court Should Dismiss the Complaint with Prejudice. ...................... 25

CONCLUSION.................................................................................. 25

ILWU AND ILWU LOCAL 13'S JOINT MOTION TO DISMISS FAC

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*,
    141 F.3d 947 (9th Cir. 1998)......................................................18, 22, 23

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
    836 F.3d 1171 (9th Cir. 2016)..........................................................15, 21

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
    948 F.2d 536 (9th Cir. 1991).................................................................15

*Apex Hosiery v. Leader*,
    310 U.S. 469 (1940)................................................................................13

*Armstrong Surgical Ctr., Inc. v. Armstrong County Mem. Hosp.*,
    185 F.3d 154 (3rd Cir. 1999)...................................................................7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................................16, 19

*Ass'n of Wash. Pub. Hosp. Dists. v. Philip Morris, Inc.*,
    241 F.3d 696 (9th Cir. 2001)..................................................................23

*Associated General Contractors of California, Inc. v. NLRB*,
    514 F.2d 433 (9th Cir. 1975)..................................................................24

*Atl. Richfield Co. v. USA Petroleum Co.*,
    495 U.S. 328 (1990)................................................................................21

*Auto Sounds Inc. v. Audiovox Elec. Corp.*,
    2012 WL 12892938 (C.D. Cal. Dec. 3, 2012) ...................................21, 22

*Basile v. City of Poway*,
    2009 WL 10726770, *14 (S.D. Cal. July 8, 2009)..................................12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................16, 17, 18, 19

*Boone v. Redevelopment Agency of the City of San Jose*,
    841 F.2d 886 (9th Cir. 1988).......................................................5, 6, 7, 12

*Brantley v. NBC Universal, Inc.*,
    675 F.3d 1195 (9th Cir. 2012).....................................................14, 19, 21, 23

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
    509 U.S. 209 (1993)................................................................................21

ILWU AND ILWU LOCAL 13'S JOINT MOTION TO DISMISS FAC

**TABLE OF AUTHORITIES** *(cont.)*

Page(s)

**Cases** *(cont.)*

*Brown & Root, Inc. v. Louisiana State AFL-CIO,*
 10 F.3d 316 (5th Cir. 1994)..................................................5, 8, 23, 24

*Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.,*
 810 F.2d 869 (9th Cir. 1987).......................................................12, 13

*City of Columbia v. Omni Outdoor Advertising, Inc.,*
 499 U.S. 365 (1991) .............................................................4, 5, 6, 10

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
 690 F.2d 1240 (9th Cir. 1982)..........................................................11

*Coll v. First Am. Title Ins. Co.,*
 642 F.3d 876 (10th Cir 2011).............................................................7

*Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.,*
 365 U.S. 127 (1961) ............................................................................4

*Embry-Riddle Aeronautical Univ. v. Ross Aviation, Inc.,*
 504 F.2d 896 (5th Cir. 1974).............................................................13

*Evans Hotel, LLC v. Unite Here Local 30,*
 433 F.Supp.3d 1130 (S.D. Cal. 2020) .......................................5, 6, 7

*Fed. Trade Comm'n v. Qualcomm Inc.,*
 969 F.3d 974 (9th Cir. 2020)........................................................16, 23

*Franchise Realty Interstate Corp. v. San Francisco Local*
*Joint Exec. Bd. of Culinary Workers,*
 542 F.2d 1076 (9th Cir. 1976)...................................................*passim*

*Hunt v. Crumboch,*
 325 U.S. 821 (1945) ..........................................................................13

*In re Musical Instruments & Equip. Antitrust Litig.,*
 798 F.3d 1186 (9th Cir. 2015).........................................16, 17, 18, 20

*Kottle v. Northwest Kidney Centers,*
 146 F.3d 1056 (9th Cir. 1998)...........................................................11

**TABLE OF AUTHORITIES** *(cont.)*

Page(s)

**Cases** *(cont.)*

*Les Shockley Racing, Inc. v. Nat. Hot Rod Ass'n,*
  884 F.2d 504 (9th Cir. 1989).................................................................21, 22

*Manistee Town Center v. City of Glendale,*
  227 F.3d 1090 (9th Cir. 2000)......................................................................11

*McKay, Inc. v. City of Huntington Park,*
  No. 17-01457-SJO, 2017 WL 10059252 (C.D. Cal. Dec. 21, 2017) .................7

*MetroNet Servs. Corp. v. Qwest Corp.,*
  383 F.3d 1124 (9th Cir. 2004).....................................................................15

*name.space, Inc. v. ICANN,*
  795 F.3d 1124 (9th Cir. 2015)........................................................14, 16, 18

*NLRB v. American Federation of Television and Radio
Artists, San Francisco Local,*
  191 F. Supp. 676 (N.D. Cal. 1961)..................................................................8

*NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639,*
  362 U.S. 274 (1960) .....................................................................................23

*NLRB v. Retail Store Employees Union, Local 1001,*
  447 U.S. 607 (1980) .....................................................................................24

*NLRB v. Servette, Inc.,*
  377 U.S. 46 (1964) .......................................................................................24

*NYNEX Corp. v. Discon, Inc.,*
  525 U.S. 128 (1998) .......................................................................16, 19, 22

*Ozark Interiors, Inc. v. Carpenters Local No. 978,*
  755 F. Supp. 875 (W.D. Mo. 1990)...............................................................24

*Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.,*
  555 U.S. 438 (2009) .....................................................................................15

*Parker v. Brown,*
  317 U.S. 341 (1943) ...............................................................................12, 13

**TABLE OF AUTHORITIES** *(cont.)*

Page(s)

**Cases** *(cont.)*

*Rebel Oil v. Atlantic Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995)...........................................................................22

*Reddy v. Litton Indus., Inc.*,
  912 F.2d 291 (9th Cir. 1990)...........................................................................25

*S. Motor Carriers Rate Conference, Inc. v. United States*,
  471 U.S. 48 (1985) .........................................................................................12

*Sony Electronics v. Soundview Technologies, Inc.*,
  157 F. Supp. 2d 180 (D. Conn. 2001) ...............................................................7

*Sosa v. DirecTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006)...................................................................4, 5, 8

*Surf City Steel, Inc. v. International Longshore and
Warehouse Union*,
  2017 WL 597379 (C.D. Cal. Mar. 7, 2017) ...............................................19, 20

*Tanaka v. University of Southern California*,
  252 F.3d 1059 (9th Cir. 2001)................................................................19, 20, 21

*Transphase Systems, Inc. v. Southern California Edison Co.*,
  839 F. Supp. 711 (C.D. Cal. 1993)..........................................................6, 10, 25

*United Ass'n of Journeymen and Apprentices of Plumbing and
Pipefitting Industry of the U.S. and Canada, Local 32,
AFL-CIO v. NLRB*,
  912 F.2d 1108 (9th Cir. 1990)..............................................................7, 8, 24

*United Mine Workers of America v. Pennington*,
  381 U.S. 657 (1965) ...........................................................................................4

*United Nurses Association of California v. NLRB*,
  871 F.3d 767 (9th Cir. 2017)..............................................................................8

*United States v. E. I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956) .........................................................................................19

*United States v. Hutcheson*,
  312 U.S. 219 (1941) .........................................................................................13

**TABLE OF AUTHORITIES** *(cont.)*

Page(s)

**Cases** *(cont.)*

*USS-POSCO Indus. v. Contra Costa County Bldg. and*
*Constr. Trades Council*,
  31 F.3d 800 (9th Cir. 1994)................................................................13, 14

*Verizon Communications, Inc. v. Law Offices of*
*Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004).................................................................................15

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003)................................................................19

*VIBO Corp. v. Conway*,
  669 F.3d 675 (6th Cir. 2012)...........................................10, 11, 12, 13

*Weisbuch v. County of Los Angeles*,
  119 F.3d 778 (9th Cir. 1997)...................................................................25

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000)........................................................4, 5, 8

**Statutes**

15 U.S.C. § 17.........................................................................................13

29 U.S.C. §§ 101-110 .............................................................................13

29 U.S.C. §§ 113-115 .............................................................................13

29 U.S.C. § 158(b)(4)(ii) ........................................................................23

29 U.S.C. § 158(b)(4)(ii)(A), (B), (D)....................................................23

**Other Authorities**

ABA Antitrust Law Developments (8th ed.).....................................13, 14

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................19

# **INTRODUCTION**

HPEC again tries to allege Sherman Act and unfair labor practice claims against the Union Defendants in order to sweep the Union into HPEC's dispute with the City and Port. Its third attempt fails. These claims should be dismissed with prejudice.

At the outset, the claims fail because Union Defendants are protected from liability on three independent grounds. First, Union Defendants' conduct is immune under the *Noerr-Pennington* doctrine. This Court dismissed the First Amended Complaint because the claims were impermissibly grounded upon the Union's Constitutionally-protected lobbying efforts directed at the City and Port. The Court gave HPEC limited leave to try to plead claims based on unprotected activity. The new allegations wholly fail to do so. The claims are still based on the same acts this Court ruled were "precisely the sorts of allegations … protected by *Noerr-Pennington*." 11/2/2020 Order, Doc. # 52, at 18.

Second, this Court held that the City and Port Defendants were immune from liability under the *Parker* immunity doctrine. That doctrine prohibits claims based on state action. The law is clear that HPEC cannot challenge legitimate state action by alleging claims against private actors, like Union Defendants, engaged in the same course of dealings. Union Defendants are, thus, also covered by *Parker* immunity.

Third, the Sherman Act claim is barred by the statutory labor exemption. That exemption protects the Union's legitimate and unilateral labor-related activities from antitrust liability. In ruling on the motion to dismiss, this Court held that Union Defendants were alleged to act in their legitimate interest and that the City and Port – not the Union – terminated HPEC. The SAC does nothing to overcome the Court's ruling or the statutory labor exemption. HPEC's Sherman Act claim is further barred.

In any case, both claims are also deficient on substantive grounds. The SAC

ILWU AND ILWU LOCAL 13 JOINT MOTION TO DISMISS SAC

1  does not properly allege a single element of the Sherman Act claim. Nor does it
2  allege coercive threats of unlawful labor activity. Further amendment would be
3  futile. The claims should be dismissed with prejudice.

4  ## BACKGROUND

5  HPEC's Second Amended Complaint (Doc. # 53) ("SAC") alleges a
6  Sherman Act Section 1 claim and a National Labor Relations Act ("NLRA") claim,
7  29 U.S.C. § 158(b)(4)(ii)(A), (B), (D), against the International Longshore and
8  Warehouse Union ("ILWU") and the International Longshore and Warehouse
9  Union Local 13 ("Local 13") (collectively "Union Defendants" or "Union"). These
10  claims are based on the Union Defendants' successful lobbying efforts to protect
11  intra-port drayage work directed at the City of Los Angeles Harbor Department
12  ("Port Defendant") and City of Los Angeles ("City Defendant").

13  After receiving Defendants' motions to dismiss its original complaint, Doc.
14  # 1, 22, 23, 24, HPEC voluntarily amended, Doc. # 36 ("FAC"). This Court then
15  dismissed the FAC under the *Noerr-Pennington* doctrine, holding the Sherman Act
16  and NLRA claims were impermissibly based upon Union Defendants' protected
17  First Amendment petitioning activity. 11/2/2020 Order Granting in Part and
18  Denying in Part Defendants' Motions to Dismiss, Doc. # 52, at 22 ("Order"). The
19  Court also dismissed the Sherman Act claim with prejudice as to the City and Port,
20  based upon state action *Parker* immunity. *Id.* at 15-16.

21  This Court specifically held that Union Defendants' alleged activities were
22  "precisely the sort[] … protected by *Noerr-Pennington*." *Id.* at 18. This included:
23  communicating with the Port; "conspir[ing]" with Port officials to "either force
24  HPEC to give ILWU workers exclusivity over drayage jobs or to kill the project;"
25  threatening the Port and HPEC; and preventing HPEC from accessing the Board. *Id.*

26  This Court also held that the FAC did not meet HPEC's burden to allege
27  exceptions to the *Noerr-Pennington* doctrine. *See Id.* at 18-20. It rejected HPEC's
28  first argument that Union Defendants' actions were a "sham" because they were

"objectively baseless." *Id.* at 19-20. It found: "It is clear from the FAC that the Union Defendants' efforts were to further their goal of assuring ILWU drayage jobs, not to meaninglessly delay or create expense." *Id.* at 19.

The Court further rejected HPEC's second argument that Union Defendants blocked HPEC's access to the Port Board. *Id.* at 20. As the Court explained, based on HPEC's own allegations, the Union Defendants "themselves" did not prevent access to the Board. *Id.* at 20. Rather, the City and Port Defendants decided HPEC should delay seeking Board approval of the ENA and Permit. *Id.* at 20. This Court further concluded that even if HPEC were prevented from going to the Board, the FAC "did not explain how that denial amounts to a denial of access to an adjudicative body." *Id.* at 20. In that regard, it noted the FAC failed to make specific allegations about the Board's approval process and power in order to assess whether it acted as an adjudicative – rather than political – body. *Id.* at 20.

Finally, this Court rejected HPEC's argument that Union Defendants' had engaged in "independently unlawful conduct." *Id.* at 20. It explained that HPEC "misconstrues the independent illegal conduct exception" and found that the claims were not based on any conduct that was "*independent* of the defendant's petitioning activity." *Id.* at 21. Rather, Union Defendants demand for exclusive jurisdiction and work stoppage threats were "part and parcel" of its "attempts to lobby the government." *Id.* at 21.

Nonetheless, this Court granted HPEC limited leave to amend to try to "overcome *Noerr-Pennington* immunity." *Id.* at 22. The Court directed that HPEC would need to plausibly allege additional facts supporting that (1) Union Defendants prevented HPEC from accessing the Board, or (2) Union Defendants engaged in *independent* illegal conduct. *Id.* at 22. Having held Union Defendants immune from liability, the Court did not have occasion to address Union Defendants' additional arguments that HPEC's Sherman Act and NLRA claims are substantively deficient.

Union Defendants have attached a redline comparing changes between the

FAC and SAC. *See* Exhibit A to Declaration of Trevor V. Stockinger ("Ex. A"). As that redline document shows, the SAC still grounds Sherman Act and NLRA liability solely on Union Defendants' successful lobbying efforts to obtain jurisdiction over intra-port drayage. *See, e.g.*, Ex. A at ¶¶ 202, 203, 211, 221, 222, 226. While the SAC adds some factual allegations, none allege non-petitioning behavior by the Union Defendants. *See, e.g.*, Ex. A at ¶¶ 54-61, 133, 135, 137, 140, 142, 145, 146, 147, 161, 162, 167, 180, 181. In addition, these allegations do not state that Union Defendants themselves prevented Board access. *See id.* Further, the SAC adds some allegations concerning the Board's general powers to approve contracts, but none specifically allege powers similar to judicial bodies. *Id.* at ¶¶ 37-46, 70. The SAC also adds two paragraphs arguing the law – some of which is taken verbatim out of its previous briefing – that this Court already considered and rejected. *See id.* ¶¶ 197, 200.

The Union Defendants now move to dismiss both claims with prejudice.

## ARGUMENT

## I.   The *Noerr-Pennington* Doctrine Still Bars HPEC's Claims.

The amended Sherman Act and NLRA claims are still barred by the *Noerr-Pennington* doctrine. This Court previously held that the *Noerr-Pennington* doctrine requires courts "construe statutes so as to avoid burdens on activity arguably falling within the scope of the Petition Clause of the First Amendment." Order at 17 (quoting *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 942 (9th Cir. 2006)). Thus, those who petition the government are immune from liability based on the petitioning conduct. Order at 17; *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000). Immunity is granted even if a person seeks anticompetitive action from the government or has other selfish motives. Order at 17 (citing *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 379-80 (1991)); *see United Mine Workers of America v. Pennington*, 381 U.S. 657, 670 (1965); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961).

1    The *Noerr-Pennington* doctrine is based on "the principle that antitrust laws
2    regulate business, not politics." Order at 17 (quoting *City of Columbia*, 499 U.S. at
3    383). Although it "originally arose in the antitrust context, [the doctrine] applies
4    equally in all contexts." Order at 17 (quoting *White*, 227 F.3d at 1231). Thus, the
5    doctrine also immunizes petitioning conduct from liability for labor law violations.
6    *Sosa*, 437 F.3d at 930 ("Labor laws must be interpreted, where possible, to avoid
7    burdening" petitioning behavior.); *Brown & Root, Inc. v. Louisiana State AFL-*
8    *CIO*, 10 F.3d 316, 319 (5th Cir. 1994) (applied to 158(b)(4)(ii) claim); *Evans*
9    *Hotels, LLC v. Unite Here Local 30*, 433 F.Supp.3d 1130, 1143-45 (same).

10    The *Evans Hotels* case is illustrative. There, the court dismissed Sherman
11    Act and NLRA claims alleging the same conduct at issue in this case. As here, the
12    plaintiff in *Evans Hotel* alleged a secondary boycott (*compare* 433 F.Supp.3d at
13    1138, 1141 *with* SAC ¶¶ 213-230), colorful threats (*compare* 433 F. Supp. 3d at
14    1146 *with* SAC ¶¶ 6, 120, 130, 135), secret meetings with city council to make
15    demands (*compare* 433 F. Supp. 3d at 1150 *with* SAC ¶¶ 103, 128 (heading)), and
16    union pressure to stop hearings being scheduled (*compare* 433 F. Supp. 3d. at 1146
17    *with* SAC ¶¶ 117, 139, 161). Despite this conduct, the district court held *Noerr-*
18    *Pennington* protected the union from liability. 433 F. Supp. 3d at 1152-54; *see*
19    *Boone v. Redevelopment Agency of the City of San Jose*, 841 F.2d 886, 889 (9th
20    Cir. 1988) (affirming dismissal of claims based on developer's lobbying of city
21    agency to amend redevelopment plan to harm competitors); *Franchise Realty*
22    *Interstate Corp. v. San Francisco Local Joint Exec. Board of Culinary Workers*,
23    542 F.2d 1076, 1078 (9th Cir. 1976) (affirming dismissal of claims based on union
24    and restaurant operator's lobbying city Board of Permits Appeal to deny permit to
25    competitor McDonald's).

26    In its prior ruling, and consistent with *Evans Hotel*, this Court held that the
27    following allegations in the FAC were "precisely the sorts of allegations that are
28    protected by *Noerr-Pennington*": "(1) [Union Defendants] met and communicated

secretly with the Port ... even though they and no jurisdiction over the Project; (2) they conspired with Seroka to either force HPEC to give ILWU work exclusivity over drayage jobs or to kill the project; (3) they threatened the Port and HPEC on numerous occasions with actions such as 'war' and 'civil unrest'; and (4) they prevented HPEC from access to the Board's processes for approval of the amendment to the ENA and the amendment to the pilot study permit." Order at 18. The same allegations are found in the SAC. *Compare* FAC ¶¶ 77, 86, 93, 99, 102 *with* SAC ¶¶ 103, 112, 119, 125, 128; *compare* FAC ¶¶ 6, 13, 77, 78, 85, 87, 93, 97, 110, 156 *with* SAC ¶¶ 6, 13, 103, 104, 111, 113, 119, 123, 136, 187; *compare* FAC ¶¶ 6, 9, 109, 120 *with* SAC ¶¶ 6, 9, 135, 147; *compare* FAC ¶¶ 12, 91, 133 *with* SAC ¶¶ 12, 117, 161. Thus, the *Noerr Pennington* doctrine still facially immunizes Union Defendants from Sherman Act and NLRA liability alleged in the SAC.

To overcome *Noerr-Pennington* protection, HPEC must meet a "demanding pleading standard" with specific allegations showing the doctrine does not apply. *Transphase Systems, Inc. v. S. Cal. Edison Co.*, 839 F. Supp. 711, 717 (C.D. Cal. 1993); *see Boone*, 841 F.2d at 894. This Court granted HPEC leave to amend to allege either that Union Defendants engaged in illegal conduct separate from First Amendment speech or that they prevented HPEC from accessing the Board as an adjudicative body. Order at 22. The SAC's allegations fail to sufficiently allege either factual requirement.

### A. The SAC Does Not Allege Claims Based on Conduct Independent of the Petitioning Behavior.

As in the FAC, the SAC fails to allege any "claim … based on conduct *independent* of the defendants' petitioning activity." Order at 21 (emphasis in original). This Court previously held that "HPEC misconstrue[d] the independent illegal conduct exception." Order at 21. The Court recognized that *Noerr-Pennington* protection still exists even if lobbying efforts involve "some element of unlawfulness (beyond mere anticompetitive motivation)." *Omni*, 499 U.S. at 383;

ILWU AND ILWU LOCAL 13 JOINT MOTION TO DISMISS SAC

*see Coll v. First Am. Title Ins. Co.*, 642 F.3d 876, 898 (10th Cir. 2011) (rejecting that "bribery or other acts that might violate state or federal law" strip *Noerr-Pennington* protections); *Armstrong Surgical Ctr., Inc. v. Armstrong County Mem. Hosp.*, 185 F.3d 154, 163 (3rd Cir. 1999) (ruling liability "precluded even where … party urging the action did so by bribery, deceit or other wrongful conduct….."); *Boone*, 841 F.2d at 894-95 (ruling *Noerr-Pennington* applies despite "direct payments" to city council and "secret agreements"); *see also Franchise Realty Interstate Corp.*, 542 F.2d 1076 at 1081 (*Noerr-Pennington* applies despite "threats to withdraw political support….").

Rather, this Court held that liability must be based on conduct separate from protected petitioning conduct. Order at 21 (citing *McKay, Inc. v. City of Huntington Park*, No. 17-01457-SJO, 2017 WL 10059252, *5 (C.D. Cal. Dec. 21, 2017); *Sony Electronics v. Soundview Technologies, Inc.*, 157 F. Supp. 2d 180, 181-82 (D. Conn. 2001)). It dismissed the FAC because Union Defendants' "demand for exclusive jurisdiction over intra-port drayage and its threats of work stoppage are part and parcel of its attempts to lobby government to protect its interests." Order at 21 (citing *Evans Hotel*, 433 F. Supp.3d at 1150-51 (holding immune union demands and threats to city council and acts to delay vote on proposed lease amendment)); *United Ass'n of Journeyman & Apprentices of Plumbing & Pipefitting Indus. Of U.S. & Canada, Local 32, AFL-CIO v. NLRB*, 912 F.2d 1108, 1110 (9th Cir. 1990) ("an unqualified threat to picket a jobsite alone does not constitute a violation of the Act's secondary boycott provisions.") (hereinafter "*Local 32*").

The SAC's claims are still based solely on the same conduct. The charging allegations expressly base the Sherman Act and NLRA claims on Union Defendants' demand for exclusive jurisdiction and work stoppage threats. *See* SAC ¶¶ 202, 221, 226, 227, 228, 229. The limited, new factual allegations similarly all relate to this demand and related threats. *See* SAC ¶¶ 91, 106, 110, 120, 124, 135,

137, 139, 145, 147. Thus, the SAC continues to allege "lobbying activity … at the heart of *Noerr-Pennington* immunity" and should be dismissed. Order at 21.

Instead of adding new facts, HPEC amends to make baseless legal argument. HPEC adds an allegation that quotes verbatim legal argument from its prior opposition to Union Defendants' Motion to Dismiss. *Compare* Doc. # 47, at 18:13-24 *with* SAC ¶ 195. This Court already considered and rejected that argument because it "misconstrues" the law. Order at 21.

The SAC also cites a 60-year-old district court opinion for the proposition that "[a]n appeal for a secondary boycott is not protected free speech…." SAC ¶ 195 (citing *NLRB v. American Federation of Television and Radio Artists, San Francisco Local*, 191 F. Supp. 676, 679 (N.D. Cal. 1961)). That case is inapposite for multiple reasons. First, it contradicts more recent Ninth Circuit authority. *See Sosa*, 437 F.3d at 930 ("Labor laws must be interpreted, where possible, to avoid burdening the petitioning behavior.") Second, it contradicts this Court's holding that NLRA cases are only treated differently to the extent they concern *employer* speech – which is not alleged here. Order at 21-22; *see White*, 227 F.3d at 1236 (Employer speech is "limited to an extent that would rarely, if ever, be tolerated in other contexts."); *United Nurses Association of California v. NLRB*, 871 F.3d 767, 787 (9th Cir. 2017) (*Noerr-Pennington* does not apply because "employer's First Amendment rights cannot outweigh the equal rights of the employees to associate freely…." (internal quotation and citation omitted)). Third, the case cited by HPEC concerned actual activity, not mere amorphous threats – as alleged here. *See Franchise Realty Interstate Corp.*, 542 F.2d at 1085 (general allegation of picketing insufficient because it fails to "indicate that … the picketing falls outside the traditional protection afforded … by the First Amendment); *Local 32*, 912 F.2d at 1110 (court "cannot infer that [a] [u]nion's unqualified threat to picket … would be unlawful."); *Brown & Root*, 10 F.3d at 322 (statements "we're going to do whatever is necessary" and "my people … will do what they will do" insufficient).

1  In short, *American Federation of Television and Radio Artists* is inapplicable, and

2  the SAC fails to allege claims based on independent unlawful conduct.

3    **B.    The SAC Fails to Allege the Union Defendants Denied HPEC**

4    **Access to the Board When it Acted in an Adjudicatory Manner.**

5         The SAC fails to allege denial of access to the Board. Rather, the SAC now

6  concedes HPEC had access regardless of Union Defendants' lobbying efforts:

7         [M]embers of the public are given the opportunity to directly address

8         the Board on any items of interest … before and during the Board's

9         consideration of the item by attending a Board of Harbor

10        Commissioner's meeting and filling out a speaker card.

11  SAC ¶ 39. This paragraph affirms that HPEC always had Board access as long as it

12  showed up at a meeting and filled out a speaker card. Allegations also make clear

13  HPEC had substantial direct communications with Board members and even the

14  Mayor. *See*, *e.g.*, SAC ¶¶ 66 (Rosenthal "celebrated … by meeting Mayor Garcetti

15  and his Chief of Staff"); 159 (HPEC regularly met Board Vice President Arian);

16  161 (Mayor will thank HPEC directly); 166 (HPEC attends Port "holiday party").

17         Even apart from this dispositive concession, the SAC also fails to allege the

18  requirements this Court laid out to meet the denial of access exception: (1) "the

19  Union Defendants prevented HPEC from accessing the Board," Order at 22, (2) by

20  something other than their successful lobbying efforts, *see* Order at 20, and (3) that

21  denial of access "amounts to denial of access to an adjudicative body." Order at 20.

22         First, the SAC still contains the same allegations showing that it was City

23  and Port officials, not Union Defendants, who delayed Board action. *Compare*

24  FAC ¶¶ 112, 115, 117, 133 (cited at Order at 20) *with* SAC ¶¶ 139, 142, 144, 161.

25  And, newly revised allegations state Port officials, not Union Defendants: (1)

26  failed to disclose the Board had not approved the ENA Amendment or Permit,

27  SAC ¶¶ 68, 80, 83, 100, 114, 146; (2) failed to disclose ILWU's lobbying efforts,

28  SAC ¶ 100; (3) were "skittish" about going before the board without ILWU

support, SAC ¶¶ 139, 142; (4) "pulled the HPEC item from the agenda," SAC ¶¶ 81, 117; (5) "induced" HPEC "not to take action," SAC ¶¶ 160, 183; and (6) thereby caused HPEC's harm, SAC ¶ 83. Thus, the SAC reaffirms that HPEC is still complaining about the City and Port's conduct; the SAC's factual allegations simply do not support the new conclusory assertion that "[t]he Union Defendants controlled whether HPEC had access to the Board…." SAC ¶ 200.

Second, even if one could construe the allegations to mean that Union Defendants had caused the denial of access, Union Defendants did so through successful lobbying efforts. *See* SAC ¶ 222; *see* Order at 20. Successful direct lobbying efforts cannot strip *Noerr-Pennington* protection. As the Supreme Court has observed: "[a]ny lobbyist or applicant, in addition to getting himself heard, seeks by procedural and other means to get his opponent ignored." *Omni*, 499 U.S. at 381. Consistent with Supreme Court precedent, the Ninth Circuit has held that "direct lobbying efforts" are "absolutely immune" from liability. *Franchise Realty Interstate Corp.*, 542 F.2d at 1080; *see Transphase Systems, Inc.*, 839 F. Supp. at 717 ("The 'sham exception' does not appear to extend to direct lobbying efforts…."); *see also Franchise Realty*, 542 F.2d at 1079 ("We find it particularly hard to accept the characterization as 'baseless' or 'frivolous' of opposition which is entirely successful in obtaining the governmental action sought….").

Thus, even if there were denial of access, the *Noerr-Pennington* doctrine still immunizes Union Defendants from liability. As this Court previously held, HPEC failed to meet its burden to strip *Noerr-Pennington* protection because "Union Defendants were successful in their lobbying efforts to ensure their interests were prioritized." Order at 20; *see Franchise Realty*, 542 F.2d at 1084 (exception inapplicable because "[m]ere opposition would not defeat McDonald's purpose; to do that, the defendants had to persuade the Board to rule in their favor and it is alleged they succeeded"); *VIBO Corp. v. Conway*, 669 F.3d 675 (6th Cir. 2012) ("Defendants petitioned for specific outcome and succeeded; this is the precise

1    situation that falls outside the sham exception").

2         Third, the SAC also fails to "explain how … denial [of access] amounts to a

3    denial of access to an ***adjudicative body***" "even if HPEC was prevented from

4    accessing the Board." Order at 20 (emphasis added). The denial of access sham

5    exception does not apply to "*all* administrative entities;" rather, the exception only

6    applies where an agency "act[s] in an 'adjudicatory' capacity." *Kottle v. Northwest*

7    *Kidney Centers*, 146 F.3d 1056, n. 5 (9th Cir. 1998). This is because "activity

8    which is acceptable before a political body is not necessarily acceptable before an

9    administrative or judicial body." *Clipper Exxpress v. Rocky Mountain Motor Tariff*

10   *Bureau, Inc.*, 690 F.2d 1240, n. 27 (9th Cir. 1982).

11        As this Court has observed, unlike in adjudicatory proceedings, it is

12   "pointless" to assess whether political lobbying efforts are an abuse of process

13   "because there are few, if any, objective standards in the political realm." Order at

14   19 (quoting *Kottle*, 146 F.3d at 1061); *see Manistee Town Center v. City of*

15   *Glendale*, 227 F.3d 1090, 1094 (9th Cir. 2000) (*Noerr-Pennington* exception

16   "simply does not fit" because "[t]here are no enforceable standards" by which to

17   judge defendants' conduct in petitioning County to enter leases); *Franchise Realty*,

18   542 F.2d at 1079 (no "precise legal standards" to judge lobbying to permit board

19   because "almost any position" "may be urged before … a political body").

20        The SAC still does not allege facts specifically showing the Board applied

21   concrete legal standards and procedures, analogous to court proceedings, when

22   considering the operable contracts or in terminating HPEC. *See* Order at 20 (FAC

23   "lack[ed] specificity regarding the Board's approval processes and powers");

24   *compare Kottle*, 146 F.3d at 1062 (finding adjudicatory body where Department of

25   Health was "governed by APA procedures and statutory standards" and assessed

26   application through attorney argument and questioning of witnesses). New

27   allegations only cite to the Board's general authority to approve or disapprove

28   contracts. SAC ¶¶ 40-46. These allegations of broad powers make clear that the

Board acted in a political, rather than an adjudicative, capacity. *Franchise Realty*, 542 F.2d at 1079 ("extremely broad standards" suggested San Francisco Board of Permit acted as political body when denying permit to McDonald's); *Boone*, 841 F.2d at 896 (San Jose Redevelopment Agency and city council "were carrying out essentially legislative tasks in amending" a development plan to alter parking).

For these reasons, the SAC fails to sufficiently allege facts that could support stripping Union Defendants of *Noerr-Pennington* immunity.[1]

## II.    The Union Defendants' Conduct is Protected by the *Parker* Doctrine.

HPEC's claims against the Union Defendants should also be dismissed as protected by the *Parker* immunity doctrine. *Parker v. Brown*, 317 U.S. 341 (1943). "Where a state is protected by state-action immunity, that immunity extends to private entities involved in the same course of dealing." *VIBO Corp.*, 669 F.3d at 686 (citing *S. Motor Carriers Rate Conference, Inc. v. United States*, 471 U.S. 48, 56-57 (1985)). "*Parker* immunity exempts state action, not merely state actors" and cannot be circumvented by suing participating private parties. *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 878 (9th Cir. 1987).

This Court ruled the City and Port Defendants are entitled to state action immunity, finding their "conduct negotiating with HPEC and the Union Defendants" to improve the Port and maintain labor peace was authorized state action. Order at 14-15.  Because HPEC's claims against Union Defendants are tethered to the alleged course of negotiations arising out of the City and Port Defendants' immunized state action, these claims should also be dismissed against Union Defendants on grounds of *Parker* immunity. *See* SAC ¶¶ 199, 202, 222;

---

[1] HPEC's newly-alleged case, *Basile v. City of Poway*, 2009 WL 10726770, *14 (S.D. Cal. July 8, 2009), is inapposite. *See* SAC ¶ 200. In that case, the defendant was on the city council and alleged to have abused her position to interfere with administrative processes governing residential development. That case did not involve pure lobbying efforts, and instead concerned the defendant's direct efforts to block permitting processes by usurping typical standards.

*VIBO Corp., Inc.*, 669 F.3d at 687 (affirming dismissal of refusal to deal claims against manufacturing defendants where court found state immune under *Parker*); *Charley's Taxi Radio Dispatch Corp.*, 810 F.2d at 878–79 (holding private taxi company immune under *Parker* when it entered exclusive contract with state where state is also immune).

## III. Union Defendants are Also Immune from Sherman Act Liability Under the Statutory Labor Exemption.

Beyond First Amendment protection, Congress has exempted a broad range of labor union activities where the conduct is in furtherance of increasing wages, improving working conditions, and expanding representation of the workforce. 15 U.S.C. § 17; s*ee* 29 U.S.C. §§ 101-110, 113-115 (Norris-LaGuardia Act); *see United States v. Hutcheson*, 312 U.S. 219, 232 (1941); *see also* ABA Antitrust Law Developments at 1492-1495 (8th ed.) (examining exemption history). HPEC has failed to allege around this statutory exemption. *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. and Constr. Trades Council*, 31 F.3d 800, 805 n.3 (9th Cir. 1994) (plaintiff has burden because exemption is not affirmative defense).

The statutory labor exemption applies even where the activity impairs or eliminates competition. *See Apex Hosiery v. Leader*, 310 U.S. 469, 501-504 (1940). Indeed, a union has been allowed to target a non-union business for the express purpose of eliminating it. *See Hunt v. Crumboch*, 325 U.S. 821, 824-825 (1945) (boycott that would violate antitrust laws in traditional setting is immunized under the statutory labor exemption); *USS-POSCO Indus.*, 31 F.3d at 809 (statutory labor exemptions allows efforts to "eliminate non-union shops"); *Embry-Riddle Aeronautical Univ. v. Ross Aviation, Inc.*, 504 F.2d 896, 903 (5th Cir. 1974) ("A Union can, without forfeiting the exemption ... act with a purpose to injure or even eliminate the business of an employer....").

A union qualifies under the statutory labor exemption if: (1) the organization is a "bona fide" labor group; (2) the union acts in its own "self interest" and limits

the conduct to labor market objectives; and (3) the union did not combine with a nonlabor entity. *See* <u>ABA Antitrust Law Developments</u> at 1493 (case citations omitted). HPEC's own allegations demonstrate that these three criteria are met.

First, there is no dispute that ILWU and Local 13 are bona fide labor organizations. *See* SAC ¶¶ 27-28. Second, absent a very strong showing to the contrary, the Union is presumed to be acting in its own legitimate self-interest. *USS-POSCO*, 31 F.3d at 808. The SAC makes no showing to the contrary; instead, it corroborates that the Union supported drayage jobs for its workers. *See*, *e.g.*, *id.* ¶ 147 ("At the meeting [between HPEC and Union Defendants], the Union Defendants confirmed that they would only approve the Project if given jurisdiction over intra-port drayage."); *id.* ¶ 134 ("The ILWU claimed that it does this work already…."); *id.* ¶ 135 (ILWU wanted to "get the work"). Indeed, based on these allegations, this Court found the Union acted in its legitimate interest: "[T]he Union Defendants' efforts were to further their goal of assuring ILWU drayage jobs…." Order at 19. Third, as addressed below, no agreement between Union Defendants and the Port of Los Angeles is properly alleged. *See infra* at IV.B.

On this record, HPEC's antitrust claim should be dismissed because it squarely falls within the statutory labor exemption.

## IV.     The Sherman Act Section 1 Claim Also Fails on Substantive Grounds.

The Court should also dismiss the Sherman Act claim on substantive grounds. The SAC alleges that Defendants agreed to "refuse to deal" with HPEC, SAC ¶ 202, or, relatedly, deny HPEC access to an essential facility, *id.* ¶ 204. These are not cognizable theories as alleged, and, even if they were, the allegations fail to show: (1) an agreement, (2) that unreasonably restrains trade, and (3) that harms plaintiff from the anticompetitive conduct. *See name.space, Inc. v. ICANN*, 795 F.3d 1124, 1129 (9th Cir. 2015); *Brantley v. NBC Universal, Inc*., 675 F.3d 1195, 1197 (9th Cir. 2012).

**A.    The SAC Fails to Plausibly Allege A Refusal to Deal or Denial of an Essential Facility.**

At the outset, the Sherman Act claim is based on invalid legal theories. The Supreme Court has ruled that "essential facility claims should ... be denied where a state or federal agency has effective power to compel sharing and to regulate its scope and terms." *See Verizon Communc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411 (2004) (internal quotation omitted). It similarly reasoned that a refusal to deal claim fails where dealing is regulated or compelled by the government. *See id.* at 409-410. Consistent with this binding authority, the Ninth Circuit has dismissed claims based on government regulation. *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1129 (9th Cir. 2004). Here, the City is a "political subdivision" of California, SAC ¶ 26, and the Port is a City department that "ma[kes] decisions with respect to parties' rights and obligations...," *id.* ¶ 25, and "control[s] access to POLA business," *id.* ¶ 204. The Sherman Act claim facially challenges that power to regulate. *See* SAC ¶¶ 202, 205. HPEC's theory is not cognizable.

Even more fundamentally, courts normally do not disturb "the long recognized right" to determine with whom and on what terms to deal. *Trinko*, 540 U.S. at 408; *Pac. Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 555 U.S. 438, 457 (2009). All that is alleged here is that talks among the parties about deal terms broke down. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016) (there is "no duty to deal under the terms and conditions preferred by [a competitor's] rivals." (internal citation and quotation omitted)). Further, these failed discussions over the appropriate terms on which HPEC could use Port land do not state a claim under the essential facilities doctrine, *i.e.* they do not show the "unavailability" of a facility HPEC "must obtain in order to compete." *See* SAC Exh. B at 9, 39 (listing other development opportunities); *Trinko*, 540 U.S. at 411 (2004); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 542 (9th Cir.

1    1991). Accordingly, the refusal to deal and essential facility theories are without

2    merit, and the claim should be dismissed.

3           **B.    The SAC Fails to Plausibly Allege an Agreement.**

4           The allegations are also insufficient to allege an agreement among

5    Defendants, even if HPEC had a cognizable legal theory. The Supreme Court has

6    admonished that courts must be wary of "false positives." *Bell Atl. Corp. v.*

7    *Twombly*, 550 U.S. 544, 554 (2007) (citation omitted) . This is particularly the case

8    with claims for refusals to deal because choosing with whom to deal lies "close to

9    the heart of the competitive process" and such choices violate the Sherman Act

10   only in rare instances. *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 137 (1998);

11   *FTC v. Qualcomm Inc.*, 969 F.3d 974, 993 (9th Cir. 2020) ("As a general rule,

12   businesses are free to choose the parties with whom they will deal, as well as the

13   prices, terms, and conditions of that dealing." (internal citation omitted)).

14          Therefore, to meet its burden, HPEC must allege more than ambiguous

15   behavior that is "consistent with conspiracy, but just as much in line with a wide

16   swatch of rational and competitive business strategy…." *Twombly*, 550 U.S. at

17   554; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("[F]acts that are merely

18   consistent with a defendant's liability … stop[] short of the line between possibility

19   and plausibility of entitlement to relief."). This Court "cannot … infer an

20   anticompetitive agreement when factual allegations just as easily suggest rational,

21   legal business behavior." *name.space*, 795 F.3d at 1130 (internal quote omitted).

22   Rather, HPEC has to allege facts showing "economic actions and outcomes that are

23   largely inconsistent with unilateral conduct but largely consistent with explicitly

24   coordinated action." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d

25   1186, 1194 (9th Cir. 2015). It has failed to do so.

26          First, the alleged timing of the "refusals" is insufficient to show a conspiracy

27   to terminate HPEC. Indeed, while the SAC alleges the conspiracy period began

28   with meetings from September 6, 2017 to November 15, 2017, SAC ¶¶ 105-109;

1   *see id.* ¶ 104, those meetings resulted in ***Union Defendants' support for HPEC***, *id.*

2   ¶ 83; ¶ 82 (Port representative texted: "ILWU okay to move forward with HPEC");

3   (Union spoke in favor of HPEC and Board approved permit at November 16, 2017

4   Board meeting); ¶ 84 (Port executed permit at December 12, 2017 Board meeting).

5   This facially does not support collusion to harm HPEC.

6         After this initial support, Union Defendants ended talks with HPEC but long

7   before the City and Port Defendants terminated the project. Union Defendants

8   allegedly concluded they did not want to work with HPEC around June 25, 2018.

9   *Id.* ¶ 151; *see id.* ¶ 149. Yet, the Port waited 11 months – until May 2019 – to

10  terminate the project. *Id.* ¶¶ 179-180. This temporal divide negates a plausible

11  conclusion that the decisions were the result of explicit coordination. *See In re*

12  *Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d at 1194, 1196.

13        Second, the City and Port are repeatedly alleged to have encouraged a

14  working relationship between Union Defendants and HPEC, rather than to be

15  acting in concert with Union Defendants to terminate HPEC. For example, during

16  the first meeting between HPEC and the Union Defendants, Seroka did not support

17  Union representatives, but instead admonished them: "there is to be no disruption"

18  because HPEC is a "signature project." SAC ¶ 133. Then, after the Union

19  Defendants ended talks, Port officials continued to support HPEC, advising it not

20  to give up on resolving the issues: "progress might be made once [the Union's]

21  new officers had been elected," *id.* ¶ 151, and "keep chipping away," *id.* ¶ 171. In

22  parallel, the City and Port reached out to the Union Defendants for a different

23  response even after they ended talks. *Id.* ¶¶ 151, 153, 170, 179. None of these

24  allegations suggest the City and Port were working together with Union

25  Defendants to terminate HPEC, let alone that they had entered a "preceding

26  agreement" to terminate it. *Twombly*, 550 U.S. at 557.

27        Third, the SAC alleges facts supporting that Defendants were pursuing

28  independent business interests. The SAC alleges that the HPEC proposal stated the

project would "ensure no loss of jobs to ILWU" and that "HPEC is confident the Project would increase ILWU jobs…." SAC ¶ 34. The allegations make clear that the Union Defendants spoke with HPEC to make sure that that would be the case, particularly since some of the work was allegedly already done by the Union Defendants' members. *See* SAC ¶¶ 112, 157. Seeking to protect its Union members' jobs and to ensure that HPEC would live up to the promises in its proposal is in line with the Union's "natural" interest and is "routine market conduct." *Twombly*, 550 U.S. at 566. The allegations undermine an inference of conspiracy.

Similarly, the City and Port Defendants' decision to terminate HPEC is wholly consistent with their unilateral interests. The Port allegedly would have made approximately $20 million a year had its negotiations been successful, SAC ¶¶ 16, 62, 75, and it obtained "stakeholder buy-in" for the project, SAC ¶ 171. The allegations show the Port worked to obtain that buy-in. *See* SAC ¶¶ 132-33. When it became clear to the City and Port Defendants that it was impossible, SAC ¶ 179, the Port made a rational business decision to terminate HPEC, SAC ¶ 180, and move on to alternative projects, *see* SAC ¶187. These allegations are consistent with the Port's unilateral conduct and do not plausibly allege agreement with Union Defendants. *See In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d at 1194; *name.space, Inc.*, 795 F.3d at 1130-31 ("We cannot infer an illegal agreement … simply because ICANN's rational business decisions favor the status quo rather than name.space's untested alternative business model.").

Ultimately, "[a]ntitrust claims must make economic sense." *Adaptive Power Sols., LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998). HPEC's allegations do not. It does not make sense to infer that the Port and City colluded with the Union when they had independent interests, and where the Port and City waited 11 months after their purported co-conspirators terminated negotiations – all the while attempting to cajole those same co-conspirators to continue talks with HPEC. *Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (court

need not accept as true "unreasonable inferences").[2]

### C.    The Complaint Fails to Plausibly Allege Facts Showing Injury to Competition in a Relevant Market.

Only three of the SAC's 251 paragraphs concern the key element of injury to competition in a relevant market. *See* SAC ¶¶ 205, 206, 211. These paltry allegations cannot meet HPEC's burden under the "rule of reason." *Tanaka v. University of Southern California*, 252 F.3d 1059 at 1063 (9th Cir. 2001).[3] Because the Complaint alleges neither a cognizable relevant market nor injury to competition within that market, this Court should dismiss the Sherman Act claim.

### 1.    The Allegations Do Not Define a Relevant Market.

The SAC fails to properly define a relevant market. A proper definition includes only "the pool of goods that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Surf City Steel, Inc. v. International Longshore and Warehouse Union,* 2017 WL 5973279, *7 (C.D. Cal. Mar. 7, 2017), aff'd, 780 F. App'x 467 (9th Cir. 2019); *see Tanaka*, 252 F.3d at 1063. In other words, "[d]etermination of the competitive market for commodities depends on how different from one another are the offered commodities in character or use...." *United States v. E. I. du Pont de Nemours & Co.*, 351 U.S. 377, 393 (1956). The SAC contains only a single conclusory sentence defining the "Relevant Market":

---

[2] While the SAC, in a conclusory manner, tries to spin the allegations of the Port's support of HPEC as fraudulent, those allegations do not meet the *Twombly* standard, *see Iqbal*, 556 U.S. at 678 ("labels and conclusions or a formulaic recitation of elements" will not do) (citation omitted), let alone the heightened pleading standard for fraud under FRCP 9(b), *see Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105-06 (9th Cir. 2003).

[3] The Court "generally evaluate[s] whether a practice unreasonably restrains trade … under the 'rule of reason,'" as opposed to the *per se* rule. *Brantley*, 675 F.3d at 1197. "Precedent limits the *per se* rule in the boycott context to cases involving horizonal agreements among direct competitors." *NYNEX*, 525 U.S. at 135. The Defendants are not direct competitors selling competing goods or services. Thus, the alleged agreement is analyzed under the rule of reason. *See id.* at 136.

the market "for the supply of container terminal support services and the development for container terminal support facilities in the Port of Los Angeles and Port of Long Beach, where HPEC, Defendants, purchasers, suppliers and labor compete." SAC ¶ 205.

The myriad products in this alleged definition are not interchangeable. It is axiomatic that "purchasers" and "suppliers" do not compete. Likewise, Union Defendants and other labor do not compete with HPEC – an "infrastructure developer." *Id.* ¶ 124. Nor does the Port Defendant, which manages the Port. These entities are in vertical relationships, "up and down the supply chain," as opposed to competitors. *In re Musical Instruments Antitrust Litig.*, 798 F.3d at 1192. Since none of these entities directly compete, it is not clear what products or services are even in the market. *See Surf City Steel*, 2017 WL 5973279, at *7-8. The relevant market cannot be sustained, and the claim should be dismissed on this ground alone.[4] *See Tanaka*, 252 F.3d at 1063; *Surf City Steel, Inc.*, 2017 WL 5973279, *7.

### 2.    The Allegations Fail to Allege Harm to Competition.

The SAC should also be dismissed for failure to sufficiently allege harm to competition. "A restraint violates the rule of reason if the restraint's harm to competition outweighs its procompetitive effects." *Tanaka*, 252 F.3d at 1063 (internal citation omitted). It is this "impact upon competitive conditions … which

---

[4] The SAC must also allege a cognizable geographic market that "extends to the area of effective competition" in which a buyer or seller could turn to buy or sell alternative goods or services. *Surf City Steel*, 2017 WL 597379 at *7 (internal citation omitted); *see Tanaka*, 252 F.3d at 1063. The SAC claims the geographic market is limited to the Ports of Los Angeles and Long Beach. FAC ¶¶ 206. Yet, the HPEC Proposal contained at SAC Exhibit B at pages 9 and 39, suggests there are other substitute opportunities for "infrastructure developers," like HPEC, outside these Ports. The SAC's allegation that "a container ship arriving at Port of Los Angeles" must use the Port of Los Angeles is circular and, in any case, says nothing about the geographic market for the ***supply*** of support services. *Id.* ¶ 206. The SAC, therefore, also fails to allege a relevant geographic market. *See Tanaka*, 252 F.3d at 1063.

distinguishes the antitrust violation from the ordinary business tort." *Id.* at 1064 (citation omitted). HPEC has the burden to allege "significant anticompetitive effects" in a properly defined market; allegations of harm to itself are insufficient to meet this burden. *Id.* at 1063-64; *see Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) (antitrust laws "were enacted for 'the protection of *competition*, not *competitors*'" (emphasis in original)).

The SAC offers only one allegation arguably addressing harm to competition: "Defendants' conduct is harmful to competition … because it will reduce the number of potential suppliers, increase prices, output, or quality in these markets and is designed to further the anticompetitive goal of the Union Defendants, in concert with the other Defendants, of securing monopoly control over the jobs in the market." SAC ¶ 211. That allegation fails because it is a conclusion without factual basis. *Tanaka*, 252 F.3d at 1064-65.

The allegation also fails because "allegations that an agreement has the effect of reducing consumers' choices or increasing prices to consumers does not sufficiently allege an injury to competition." *Brantley*, 675 F.3d at 1202-04 (affirming dismissal); *see Les Shockley Racing, Inc. v. Nat. Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989) (affirming dismissal of refusal to deal claim where allegations "disturbingly silent" as to effect on competitive market); *Auto Sounds Inc. v. Audiovox Elec. Corp.*, 2012 WL 12892938, *6 (C.D. Cal. Dec. 3, 2012) (complaint dismissed because it "sets forth no specific allegations supporting why such harm would occur"). Further, HPEC's attempt to couple its baseless allegation with other unsupported allegations of Defendants' "anticompetitive goal" does not remedy the pleading deficiency. *See Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 225 (1993) ("Even an act of pure malice … does not, without more, state a claim" (internal quotation omitted)); *Aerotec Int'l, Inc.*, 836 F3d. at 1184 ("Competitors are not required to engage in a lovefest").

Finally, to support harm to competition, HPEC needed to allege Union Defendants' market power. It has not. *Auto Sounds*, 2012 WL 12892938 at *5; *see Adaptive Power Solutions*, 141 F.3d at 951; *see Rebel Oil v. Atlantic Richfield Co.*, 51 F.3d 1421, 1439 (9th Cir. 1995). Moreover, even if it had, as noted above, the relevant market is not cognizably defined so the Court cannot meaningfully evaluate that market power allegation.[5]

Third and relatedly, HPEC fails to allege market exclusion. The SAC alleges no facts supporting that the purported agreement "preclud[ed] HPEC from participating in the Relevant Market." SAC ¶212. To the contrary, HPEC affirmatively alleges it has had other opportunities to sell its construction services, *see* SAC Exh. B at pp. 9, 39, and nothing in the SAC suggests it could not do so outside the Port of Los Angeles. In any case, the mere exclusion of HPEC is not enough. "[R]emoval of one or a few competitors need not equate with injury to competition.… [A] section one claimant must plead … a reduction of competition in the market in general and not mere injury to their own positions as competitors in the market." *Les Shockley*, 884 F.2d at 508; *see NYNEX Corp.*, 525 U.S. at 139 (a "simple allegation of harm [to plaintiff] does not automatically show injury to competition."); *see also Adaptive Power Solutions*, 141 F.3d at 951-52. Because HPEC has failed to allege harm to competition, the Court should dismiss the Sherman Act claim.

### D.    The Allegations Fail to Plausibly Allege Antitrust Injury.

Finally, the SAC fails to allege antitrust injury. "[P]laintiff[] must allege … that [it] has been injured by an 'anti-competitive aspect of the practice under

---

[5] The SAC alleges City and Port Defendants have market power, but that allegation is irrelevant as those Defendants are immune from liability and the claim is now only alleged against Union Defendants. In any case, the allegation is insufficient and wholly conclusory. *Auto Sounds*, 2012 WL 12892938 at *5; *see Adaptive Power Solutions*, 141 F.3d at 951.

scrutiny.'" *Brantley*, 675 F3d at 1200 (internal citation omitted). Here, HPEC has failed to sufficiently allege harm to competition and, therefore, cannot show its injury arises out of anything anticompetitive. In any case, "[p]arties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Ass'n of Washington Pub. Hosp. Districts v. Philip Morris Inc.*, 241 F.3d 696, 705 (9th Cir. 2001) (internal citation omitted); *see Qualcomm Inc.*, 969 F.3d at 992. The FAC alleges that HPEC was harmed because the Union Defendants sought a monopoly over "jobs in the market." SAC ¶ 211. Yet, HPEC alleges it "is not an employer and has no employees." *Id.* ¶ 210. As such, it has suffered no cognizable antitrust injury in the alleged market where the harm occurred and has no standing to sue. *Brantley,* 675 F.3d at 1200 (plaintiff must allege it "has been injured by an anti-competitive aspect of the practice under scrutiny." (internal citation omitted)). The Court should dismiss on this ground, as well.

## V.   The NLRA Claim Also Fails on Substantive Grounds.

HPEC's unlawful labor practice claim asserted under various subsections of the NLRA, 29 U.S.C. §158(b)(4)(ii), also substantively fails. *See* SAC ¶¶ 213-230.

That statute is only violated where a labor union: (1) "threaten[s], coerce[s], or restrain[s]" (2) a neutral person to (3) obtain a specific unlawful object. 29 U.S.C. § 158(b)(4)(ii) (A), (B), (D). The Supreme Court has cautioned against giving the "vague" words of Section 158(b)(4)(ii) a "broad sweep." *DeBartolo Corp.*, 485 U.S. at 578 (internal citation omitted); *NLRB v. Drivers, Chauffeurs, Helpers, Local Union No. 639*, 362 U.S. 274, 290 (1960); *Overstreet*, 409 F.3d at 1209. This is because Section 158(b)(4)(ii) does not reach lawful activity, including a union informing a secondary employer it will picket a primary employer. *NLRB v. Ironworkers Local 433*, 850 F.2d 551, 555 (9th Cir. 1988).

Consistent with this law, courts have held that a "union must engage in *conduct* attended by threats, coercion or restraints." *Brown & Root*, 10 F.3d at 321

(citing *NLRB v. Servette, Inc.*, 377 U.S. 46, 54 (1964) (emphasis added));
*Overstreet*, 409 F.3d at 1212 ("The only activity that appears to be clearly
proscribed by the statute is '*ambulatory* picketing' of secondary business.")
(emphasis in original); *cf. Associated Gen. Contractors of Cal., Inc. v. NLRB*, 514
F.2d 433, 439 (9th Cir. 1975) (involving "work stoppage") (cited at SAC ¶ 220).

Thus, "[v]ague references to 'problems' or 'trouble' … are insufficient to
constitute a violation…." *Brown & Root*, 10 F.3d at 320 (citing authorities collected
in *Ozark Interiors, Inc. v. Carpenters Local No. 978*, 755 F. Supp. 875, 880-82
(W.D. Mo. 1990), 957 F.2d 566 (8th Cir. 1992)). And, a court "cannot infer that [a]
[u]nion's unqualified threat to picket … would be unlawful." *Local 32*, 912 F.2d at
1111; *Brown & Root*, 10 F.3d at 322 (statements "we're going to do whatever is
necessary" and "my people … will do what they will do" insufficient).

HPEC seems to agree, alleging that threats are assessed "based on the
***specific*** language used and surrounding ***conduct*** and events." SAC ¶ 220 (citing
*NLRB v. Retail Store Employees Union, Local 1001*, 447 U.S. 607, 614 (1980)
(threats followed by picketing) (emphasis added)). Yet, the SAC alleges little was
threatened, and even what can be construed as such, is impermissibly vague. *See*
SAC ¶¶ 6, 120 (Mendoza allegedly told Port official Union would "start a 'war'");
*id.* ¶ 135 (Union could "add value" to help HPEC or "go the opposite way"); *id.* ¶
147 (Mendoza said there could be "some animosity" and "some civil unrest").
These allegations are not enough to even determine whether the Union Defendants
were threatening conduct at all – let alone conduct made illegal by Section
158(b)(4)(ii) . This is particularly true where the Union has jurisdiction over jobs
on the dock, SAC ¶ 28, where they had previously done drayage work, *id.* ¶ 134,
and where HPEC vacillates as to whether it is even an employer, *compare id.* ¶
124 *with id.* ¶ 126. The allegations are substantively deficient, and the NLRA
claim should be dismissed.

ILWU AND ILWU LOCAL 13 JOINT MOTION TO DISMISS SAC

**VI.     This Court Should Dismiss the SAC with Prejudice.**

This Court should dismiss the SAC with prejudice. This is HPEC's third attempt to state claims. Any further amendment would be futile. *See Transphase Systems, Inc.*, 839 F. Supp. at 717, 718, n.10  (denying amendment where *Noerr-Pennington* barred claim); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (amendment improper where not possible to allege viable claim without contradicting prior allegations). Many of its allegations still affirmatively negate its claims. "[A] plaintiff may plead [it]self out of court." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal citation omitted). HPEC has done so here.

**<u>CONCLUSION</u>**

For the reasons set forth above, this Court should dismiss all claims against Union Defendants with prejudice.

DATED:  January 11, 2021                    Respectfully submitted,

SR HOLGUIN, PC                             SR HOLGUIN, PC
                                           KESSELMAN BRANTLY STOCKINGER LLP

By:   */s/ Steven R. Holguin*             By:   */s/ David W. Kesselman*
        Steven R. Holguin                         David W. Kesselman

Steven R. Holguin                          Steven R. Holguin
Marisa R. Holguin                          Marisa R. Holguin
SR HOLGUIN, PC                             SR HOLGUIN, PC

*Counsel for Defendant*
International Longshore and                David W. Kesselman
Warehouse Union                            Trevor V. Stockinger
                                           KESSELMAN BRANTLY STOCKINGER
                                           LLP

                                           *Counsel for Defendant*
                                           International Longshore and Warehouse Union
                                           Local 13

## **ATTESTATION OF CONCURRENCE IN FILING**

Pursuant to Local Civil Rule 5-4.3.4, I hereby attest that Steven R. Holguin, on whose behalf this filing is jointly submitted, has concurred in this filing's content and has authorized me to file this document.


DATED:  January 11, 2021                    KESSELMAN BRANTLY STOCKINGER LLP

                                            By: _____ */s/ David W. Kesselman*_____
                                                     David W. Kesselman

                                            *Counsel for Defendant*
                                            International Longshore and Warehouse Union
                                            Local 13