**NOSSAMAN LLP**
David Graeler (CSB No. 197836)
 dgraeler@nossaman.com
Jennifer L. Meeker (CSB No. 260138)
 jmeeker@nossaman.com
Gabriela S. Pérez (CSB No. 322161)
 gperez@nossaman.com
777 South Figueroa Street, 34th Floor
Los Angeles, CA 90017
Telephone: (213) 612-7800, Fax: (213) 612-7801

**CROWELL & MORING LLP**
Jason C. Murray (CSB No. 169806)
 jmurray@crowell.com
515 S. Flower Street, 40th Floor
Los Angeles, CA 90071
Telephone: (213) 443-5590, Fax: (213) 622-2690
Akhil Sheth (CSB No. 294721)
 asheth@crowell.com
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400, Fax: (949) 263-8414

**OFFICE OF THE CITY ATTORNEY**
Janna Sidley, General Counsel (CSB No. 163642)
Janet Karkanen, Deputy City Attorney (CSB No. 162173)
425 South Palos Verdes Street
San Pedro, CA 90731
Telephone: (310) 732-3750, Fax: (310) 831-9778

Attorneys for Defendants, CITY OF LOS ANGELES
HARBOR DEPARTMENT and CITY OF LOS
ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARBOR PERFORMANCE ENHANCEMENT CENTER, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES HARBOR DEPARTMENT; et al.,<br><br>Defendants. | Case No.:  2:20-cv-03251-PSG-MAA<br><br>Hon. Philip S. Gutierrez<br><br>**CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing Date:  March 22, 2021<br>Hearing Time:  1:30 p.m.<br>Courtroom:  6A |

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 22, 2021 at 1:30 p.m., or as soon thereafter as this matter may be heard by the Honorable Philip Gutierrez, in Courtroom 6A of the United States District Court for the Central District of California, 350 West 1st Street, Los Angeles, California, Defendants City of Los Angeles and City of Los Angeles Harbor Department (collectively, the "City Defendants") will and hereby do move this Court for an Order, pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Court's inherent authority, dismissing the following claims of Plaintiff Harbor Performance Enhancement Center, LLC ("HPEC") asserted in the Second Amended Complaint ("SAC"), on the following grounds:

1. HPEC's third claim for breach of contract does not state a claim for relief based on alleged breaches of the Exclusive Negotiating Agreement ("ENA") because, as a matter of law, HPEC is not entitled to damages, and HPEC has not alleged any breach of any obligation owed under the ENA.

2. HPEC's fourth claim for breach of the implied covenant of good faith and fair dealing does not state a claim for relief arising out of the ENA on the grounds that (i) the claim is superfluous to HPEC's claims for breach of the ENA, (ii) the SAC fails to allege any conduct that would permit this Court to draw an inference of wrongdoing in violation of the implied covenant, and (iii) the alleged conduct is expressly permitted by the ENA.

3. HPEC's fifth claim for declaratory relief does not state a claim for relief at all because, as a matter of law, the amendment to the ENA ("Amendment") is invalid (as already found by this Court) and HPEC had no rights

in the Project (as defined below) as of the City of Los Angeles Harbor Department's May 2019 termination.

4.     HPEC's third claim for breach of contract and fourth claim for breach of the implied covenant of good faith and fair dealing cannot state a claim for relief to the extent these claims are based on the Amendment or the two Memoranda of Understanding ("MOUs"), as previously found by this Court.

This motion is made following the conference of counsel pursuant to Central District Local Rule 7-3, which took place on January 4, 2021, and is based on this Notice, Motion and Memorandum of Points and Authorities, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.


Dated:  January 11, 2021                    NOSSAMAN LLP
                                            DAVID GRAELER
                                            JENNIFER L. MEEKER
                                            GABRIELA S. PEREZ


                                            By:  _____/s/David Graeler_____
                                                       David Graeler

                                            Attorneys for Defendants, CITY OF LOS
                                            ANGELES HARBOR DEPARTMENT and
                                            CITY OF LOS ANGELES

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
57804480.v3

# **TABLE OF CONTENTS**

I.      INTRODUCTION. ...........................................................................1

II.     RELEVANT ALLEGATIONS IN THE SECOND AMENDED
        COMPLAINT. ................................................................................3

III.    PROCEDURAL HISTORY. ............................................................5

IV.     ARGUMENT. .................................................................................6

        A.     Legal Standard. ....................................................................6

        B.     HPEC's Third Claim for Breach of Contract Does Not State a
               Claim for Relief Based on Alleged Breaches of the ENA. .......7

               1.     HPEC is not entitled to damages under the ENA. ...........8

               2.     HPEC has failed to state a claim that the City Defendants
                      breached the ENA. ....................................................10

        C.     HPEC's Fourth Claim for Breach of the Implied Covenant of
               Good Faith and Fair Dealing Does Not State a Claim for Relief
               Arising out of the ENA. ...................................................19

        D.     HPEC's Fifth Claim for Declaratory Relief Does Not State a
               Claim for Relief. .............................................................21

        E.     HPEC's Breach of Contract and Breach of the Implied
               Covenant Claims Should be Dismissed to the Extent they
               Conflict with this Court's November 2, 2020 Order. ............24

        F.     HPEC'S Third and Fourth Claims Based on the ENA,
               Amendment, and MOUs, and its Fifth Claim, Should be
               Dismissed with Prejudice. ...............................................25

V.      CONCLUSION. ...........................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*A.B.C. Distrib. Co. v. Distillers Distrib. Corp.*,
   154 Cal. App. 2d 175 (1957)..............................................................................15

*Advanced Thermal Scis. Corp v. Applied Materials Inc.*,
   No. SACV 07-01384-JVS, 2008 WL 11338614 (C.D. Cal. July 1,
   2008)..................................................................................................................16

*Alameda Cty. Flood Control & Water Conservation Dist. v. Dep't of
   Water Res.*,
   213 Cal. App. 4th 1163 (2013)..........................................................................15

*Amelco Elec. v. City of Thousand Oaks*,
   27 Cal. 4th 228 (2002)......................................................................................18

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
   214 Cal. App. 3d 1 (1989)...................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .....................................................................................7, 14

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990)...............................................................................6

*Bekins Moving & Storage Co. v. Prudential Ins. Co.*,
   176 Cal. App. 3d 245 (1985)..............................................................................12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................7

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
   222 Cal. App. 3d 1371 (1990)............................................................................19

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
   2 Cal. 4th 342 (1992)........................................................................................20

*CAZA Drilling (Calif.) v. TEG Oil & Gas U.S.A.*,
   142 Cal. App. 4th 453 (2006)...............................................................................9

*CommunityCare HMO, Inc. v. MemberHealth, Inc.*,
　No. 06-CV-197-TCK-SAJ, 2007 WL 14672 (N.D. Okla. Jan. 3,
　2007) ......................................................................................................... 8

*Erlich v. Menezes*,
　21 Cal. 4th 543 (1999) .......................................................................... 10

*In re Facebook PPC Advert. Litig.*,
　709 F. Supp. 2d 762 (N.D. Cal. 2010) ................................................. 19

*Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*,
　Nos. 15-cv-02286-JCS and 15-cv-04931 JCS, 2016 WL 5672961
　(N.D. Cal. Oct. 2, 2016) ........................................................................ 11

*First Street Plaza Partners v. City of Los Angeles*,
　65 Cal. App. 4th 650 (1998) .................................................................. 18

*Foley v. Euless*,
　214 Cal. 506 (1931) ............................................................................... 21

*Food Safety Net Servs. v. Eco Safe Sys. USA*,
　209 Cal. App. 4th 1118 (2012) ................................................................ 8

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
　642 F. Supp. 2d 1012 (N.D. Cal. 2009) ............................................... 24

*G.L. Mezzetta, Inc. v. City of American Canyon*,
　78 Cal. App. 4th 1087 (2000) ................................................................ 18

*LA Equestrian Ctr., Inc. v. City of Los Angeles*,
　17 Cal. App. 4th 432 (1993) .................................................................. 18

*Lazy Y Ranch Ltd. v. Behrens*,
　546 F.3d 580 (9th Cir. 2008) ............................................................. 3, 7

*Lewis v. YouTube, LLC*,
　244 Cal. App. 4th 118 (2015) .................................................................. 8

*Lowry v. Sw. Airlines Co.*,
　No. SACV 15-00500-CJC, 2015 U.S. Dist. LEXIS 182228 (C.D.
　Cal. Aug. 10, 2015) ............................................................................... 19

*Markborough Cal v. Superior Court*,
　227 Cal. App. 3d 705, (1991) .................................................................. 8

*McKnight v. Torres*,
  563 F.3d 890 (9th Cir. 2009) ........................................................................ 20

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ...................................................................................... 21

*Palo Alto Town & Country Vill., Inc. v. BBTC Co.*,
  11 Cal. 3d 494 (1974) .................................................................................... 11

*B.M. ex rel. R.M. v. Encinitas Union Sch. Dist.*,
  No. CIV 08CV412-L(JMA), 2009 WL 29652 (S.D. Cal. Jan. 5,
  2009) ............................................................................................................... 16

*Renewable Land, LLC v. Rising Tree Wind Farm, LLC*,
  No. CV 12-0809 RT, 2013 WL 497628 (E.D. Cal. Feb. 7, 2013) ..................... 12

*Rhoades v. Avon Prods., Inc.*,
  504 F.3d 1151 (9th Cir. 2007) ....................................................................... 21

*Richman v. Hartley*,
  224 Cal. App. 4th 1182 (2014) ........................................................................ 7

*Sisseton-Wahpeton Sioux Tribe v. United States*,
  90 F.3d 351 (9th Cir. 1996) ........................................................................... 25

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ........................................................................... 7

*Troyk v. Farmers Group, Inc.*,
  171 Cal. App. 4th 1305 (2009) ........................................................................ 7

*Turner v. City & Cty. of San Francisco*,
  788 F.3d 1206 (9th Cir. 2015) ...................................................................... 3, 7

*Unified Dealer Grp. v. Tosco Corp.*,
  16 F. Supp. 2d 1137 (N.D. Cal. 1998) ........................................................... 12

*Wheeler v. Oppenheimer*,
  140 Cal. App. 2d 497 (1956) ............................................................................ 8

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ............................................................ 6

1

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 6

Federal Rule of Civil Procedure 41(a) .................................................................... 25

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

1

## **MEMORANDUM OF POINTS AND AUTHORITIES**

2

# I.    INTRODUCTION.

3     After this Court granted the Defendants City of Los Angeles's and City of

4 Los Angeles Harbor Department's (collectively, the "City Defendants") motion to

5 dismiss Plaintiff Harbor Performance Enhancement Center, LLC's ("HPEC") First

6 Amended Complaint ("FAC") with only limited leave to amend, HPEC filed its

7 Second Amended Complaint ("SAC") purporting to assert claims for breach of

8 contract and of the implied covenant of good faith and fair dealing based on the

9 Exclusive Negotiating Agreement ("ENA"), and attempted to resurrect claims

10 based on what the Court, in dismissing such claims, described as the "ineffective"

11 amendment to the ENA ("Amendment") and the two "unenforceable" Memoranda

12 of Understanding ("MOUs").  By this Motion to Dismiss HPEC's SAC

13 ("Motion"), the City Defendants seek to dismiss all claims based on the ENA, and

14 any claim directly or indirectly based on the Amendment and MOUs.

15     When HPEC entered into the ENA, it expressly agreed to a limited period of

16 exclusive negotiations regarding the possible development and operation of the

17 project, the terminal support facility at the former Los Angeles Export Terminal in

18 San Pedro and the former U.S. Customs House, both in Terminal Island

19 ("Project").  SAC, Exh. C, Section 1(A).  There was no guarantee—explicit or

20 implied—that the Project would ever be built.  To the contrary, HPEC agreed:

21 "Agreement **shall not be construed as a direct or indirect commitment by City**

22 **. . . to take or to not take any action**, . . . **and shall not guarantee final approval**

23 **of the Proposed Development or any other proposed project related to the**

24 **Site**."  SAC, Exh. C, Recitals (emphasis added); Section 1(C).

25     The ENA expired by its own terms on July 5, 2017, with an unexercised

26 option to extend that expiration date to January 5, 2018.  There was no guarantee

27 that the parties would negotiate indefinitely or amend the ENA.  To the contrary,

28

HPEC agreed that the "City (including [the Los Angeles] Board [of Harbor Commissioners]) **shall not be obligated or deemed obligated to take** or refrain from any action, including without limitation, . . . , **the approval of** . . . **any other agreement**, except as described in Section 1(B) above [the exclusivity provision]." *Id.*, Section 1(C).

When HPEC entered into the ENA, it also expressly agreed to forego recovery of any damages in exchange for the right to exclusively negotiate with the City Defendants during the term of the ENA: ". . . **[HPEC] agrees that, as between it and City, it is not entitled to any damages (nor any other relief or compensation),** including but not limited to reliance damages . . . ." *Id.*, Section 1(D) (emphasis added). The millions of dollars in alleged lost anticipated profits and development costs HPEC seeks to recoup via the SAC are simply not recoverable.

HPEC may not now like the bargain that it struck with the City Defendants, but the inescapable fact is that HPEC has no right to avoid the plain and explicit terms of the ENA by seeking this Court's intervention to force the City Defendants to resume negotiations, finalize the Project, or pay damages to HPEC because the Project never came to fruition.

Finally, HPEC may not circumvent this Court's November 2, 2020 Order finding the Amendment to the ENA "ineffective" and the MOUs "unenforceable" by seeking recovery for breach of the implied covenant of good faith and fair dealing and declaratory relief on the Amendment and MOUs. This Court's November 2, 2020 Order is clear, and HPEC's claims based on the Amendment and MOUs must be dismissed as violating the order.

The City Defendants respectfully request that the Court grant this Motion to Dismiss with prejudice.

## II.   RELEVANT ALLEGATIONS IN THE SECOND AMENDED COMPLAINT.[1]

In June 2015, the City Defendants solicited proposals to develop and operate the Project, a terminal support facility at an undeveloped area at the former Los Angeles Export Terminal in San Pedro and the former U.S. Customs House, both in Terminal Island (Dkt. No. 53, SAC, ¶ 31; Exh. A at § 2.2.1), and selected HPEC's proposal for further consideration in October 2015.  SAC, ¶¶ 2, 33, 36.

On July 5, 2016, the City Defendants and HPEC entered into the ENA.  *Id.* Exh. C, Preamble, ("THIS [ENA] is made and entered into this 5 day of July, 2016 . . . .").  The ENA granted the parties the "exclusive right to negotiate regarding the possible development and operation of the Site . . . for . . . twelve (12) months commencing on the effective date of this Agreement."  *Id.* Exh. C, Section 1(A).  Per Section 12 of the ENA, "[t]his Agreement . . . shall . . . be effective on the date first above written," or, July 5, 2016.  *Id.* Exh. C, Section 12.  Thus, the 12-month "Exclusivity Period" of the ENA commenced on July 5, 2016 and expired on July 5, 2017.

The ENA included one option to extend the exclusivity period for an additional six months such that, if exercised, the aggregate term would be 18 months and the ENA would terminate on January 5, 2018.  *Id.* Exh. C, Section 1(A).  In order to exercise the option, the ENA provided: "[s]uch options shall be exercised no later than thirty (30) days prior to the expiration of the Exclusivity Period, in writing, transmitted by [HPEC] to City. . . ."  *Id.*  HPEC admits that it did not exercise the option per the terms of the ENA.  *See id.* ¶ 53.  Instead, HPEC alleges that it "substantially satisfie[d]" the requirements of the ENA in order to exercise the option.  *See id.* ¶ 67.

---

[1] For purposes of this motion, all non-conclusory allegations and alleged facts not contradicted in the SAC are accepted as true.  *See Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

The pertinent terms of the ENA are discussed in more detail in the Argument section below.  But, in summary, the ENA granted HPEC the "exclusive right to negotiate regarding the possible development and operation of the [Project] Site," (*id.* Exh. C, Section 1(A)) and the parties acknowledged that the ENA "may or may not result in a final permit or agreement or development."  *Id.* Section 1(C). The parties further agreed that "all expenses and costs arising from or related to this [ENA] and/or the Proposed Development shall be the sole responsibility of the party incurring same" and that HPEC "is not entitled to any damages (nor any other relief or compensation), including but not limited to reliance damages."  *Id.* Section 1(D).

The ENA terminated on its own terms on July 5, 2017, at the earliest, or January 5, 2018, at the latest (assuming the option was properly exercised). Although the City Defendants had the right under Section 2 of the ENA to terminate the ENA earlier, there is no allegation that the City Defendants took advantage of that right.

After the parties entered into the ENA, they entered into a number of other agreements including the two MOUs (*id.* Exhs. E-F), the Permit (*id.* Exh. H), and the Indemnification Agreement (*id.* Exh. G).  The parties also entered into negotiations to amend the ENA, but the Amendment was never presented to the Los Angeles City Council ("City Council") for approval, was never validly approved, and therefore was "ineffective."  *See* Dkt. No. 52.

HPEC alleges that beginning in fall 2017 and through 2019, the City Defendants and Defendants International Longshore and Warehouse Union ("ILWU") and ILWU Local 13 (collectively, "Union Defendants") communicated and met about the Project.  SAC, ¶¶ 103-171.  HPEC concludes that these meetings were in furtherance of a conspiracy between the City Defendants and the Union Defendants to "kill the [P]roject."  *Id*.  HPEC alleges that, as part of this

4

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

conspiracy, beginning in February 2018, City of Los Angeles Harbor Department's ("Port") staff internally discussed alternative planning uses of the site that would not involve HPEC. *Id.* ¶ 111. HPEC alleges that City Defendants were actively negotiating with third parties friendly to the Union Defendants to encumber the property and/or for an alternative project thereafter. *Id.* ¶¶ 154, 167-168.

HPEC alleges that in May 2018, Port staff initiated negotiation sessions between HPEC and the Union Defendants to attempt to reach an acceptable compromise proposal; however, HPEC and the Union Defendants were unable to agree on terms. *Id.* ¶¶ 132-136, 147.

HPEC alleges that in May 2019, the City Defendants improperly terminated the negotiations with HPEC, and cancelled any remaining agreements. *Id.* ¶ 180; Exh. I. HPEC claims that the termination resulted from the alleged conspiracy between the City Defendants and the Union Defendants and violated the then-expired ENA. *Id.* ¶ 180. HPEC alleges that it has suffered damages in the form of lost anticipated profits and amounts that it expended in furtherance of the Project due to the City Defendants' alleged misconduct. *Id.* ¶¶ 4, 16, 75-76.

## III.   PROCEDURAL HISTORY.

On June 17, 2019, HPEC filed a verified petition and complaint in Los Angeles Superior Court for ordinary mandamus and declaratory relief. SAC, ¶ 189. Following demurrer briefing, discovery and motion practice, on April 8, 2020, HPEC voluntarily dismissed its state court petition. *Id.* ¶¶ 190, 192; *see* Req. for Judicial Not., Exh. A. One day prior, HPEC filed this suit in the Central District of California. Dkt. No. 1. On July 20, 2020, HPEC filed a FAC. Dkt. No. 36. The City Defendants, and the other named defendants (Eugene D. Seroka and Union Defendants) (collectively, "Defendants"), each separately filed a motion to dismiss HPEC's FAC. Dkt. Nos. 38, 40-41.

On November 2, 2020, the Court granted in part and denied in part Defendants' motions to dismiss. Dkt. No. 52 (Order). As relevant here, the Court granted the motion to dismiss HPEC's breach of contract claims against the City Defendants based on alleged breaches of the ENA, the Amendment, and the MOUs. Order, at 25-29. The Court held that the "Amendment was ineffective" because it was never "approved" by the City Council, and rejected HPEC's reliance arguments as lacking in merit. *Id.* at 25-26. The Court also held that, per explicit language in the MOUs, the MOUs were unenforceable. *Id*. The Court granted HPEC leave to amend only the "breach of the ENA". *Id.* at 29. The Court denied the motion to dismiss the breach of contract claim as to the Permit, the fifth claim for breach of the implied covenant of good faith and fair dealing, and the sixth claim for declaratory relief. *Id*.

On December 3, 2020, HPEC filed its SAC. HPEC purports to state three claims for relief against the City Defendants: (1) breach of the ENA and Permit (SAC, ¶¶ 231-238); (2) breach of the implied covenant of good faith and fair dealing as to all contracts (*id.* ¶¶ 240-246); and (3) declaratory relief (*id.* ¶¶ 247-251).

## IV.   ARGUMENT.

### A.   Legal Standard.

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) ("Rule 8(a)(2)") requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility only if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

In assessing whether a party has stated a claim upon which relief can be granted, the court shall take "all allegations of material facts as true" and construe them in light more favorable to the plaintiff. *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). However, the court need not accept as true any allegations that contradict matters properly subject to judicial notice or by exhibit. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988; *see Turner*, 788 F.3d at 1210.

## B. HPEC's Third Claim for Breach of Contract Does Not State a Claim for Relief Based on Alleged Breaches of the ENA.

"To prevail on a cause of action for breach of contract, the plaintiff must prove (1) the contract, (2) the plaintiff's performance of the contract or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damage to the plaintiff." *Richman v. Hartley*, 224 Cal. App. 4th 1182, 1186 (2014). Implicit in the element of damage is that the defendant's breach caused the plaintiff's damage." *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009).

HPEC's claim for breach of the ENA[2] against the City Defendants fails for two reasons: First, HPEC is not, as a matter of law, entitled to damages under the ENA.  Second, HPEC has failed to plead any breaches of the ENA.

### 1.      HPEC is not entitled to damages under the ENA.

In Paragraph 239 of the SAC, HPEC alleges that it "has suffered substantial financial damages as a result of the Port's breaches of the ENA … in an amount to be proven at trial."  Combing through the SAC, the only support HPEC offers for this conclusory allegation is its assertion that it "lost the historic opportunity to develop one of the most valuable and unique assets in the country" and was thus unable to realize anticipated profits of $59 million per year (SAC, ¶¶ 16, 75), and vague allegations that it incurred expenses and made investments in connection with developing the Project (*see, e.g.*, SAC, ¶¶ 1, 4, 22, 74, 76, 87, 238).  As a matter of law, HPEC is not entitled to recover such damages based on the explicit exculpatory language in the ENA.

Parties to a contract are free to agree to exculpatory or limitation of liability clauses, which "'have long been recognized as valid in California.'"  *Food Safety Net Servs. v. Eco Safe Sys. USA*, 209 Cal. App. 4th 1118, 1126 (2012) (quoting *Markborough Cal v. Superior Court*, 227 Cal. App. 3d 705, 714 (1991)); *see also Wheeler v. Oppenheimer*, 140 Cal. App. 2d 497, 499 (1956) (noting the "validity of [such clauses] is not open to doubt").  California courts routinely dismiss breach of contract claims on demurrer or on summary judgment because such clauses eliminate a party's right to seek damages.  *See, e.g.*, *Food Safety Net Servs*, 209 Cal. App. 4th at 1125-28 (summary judgment); *Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118, 125 (2015) (demurrer/motion to dismiss); *Appalachian Ins. Co. v.*

---

[2] Where, as here "there are separate and distinct breaches of contract alleged as part of a single cause of action, a party may move to dismiss those portions of the claim that fail to state a claim for relief."  *CommunityCare HMO, Inc. v. MemberHealth, Inc.*, No. 06-CV-197-TCK-SAJ, 2007 WL 14672, at *1 (N.D. Okla. Jan. 3, 2007).  The City Defendants do not challenge the third claim for breach of the Permit.

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES
57804480.v3

*McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 31 (1989); *CAZA Drilling (Calif.) v. TEG Oil & Gas U.S.A.*, 142 Cal. App. 4th 453, 475 (2006) ("[W]here the only question is which of two equal bargainers should bear the risk of economic loss in the event of a particular mishap, there is no reason for the courts to intervene and remake the parties' agreement.")

HPEC is not entitled to seek the damages claimed in this case because Section 1.D. of the ENA is an exculpatory clause that, as a matter of law, eliminates HPEC's right to damages:

> "[HPEC] and City acknowledge and agree that **all expenses and costs** arising from or related to this Agreement and/or the Proposed Development **shall be the sole responsibility of the party incurring same**, with no reimbursement from or financial contribution of any kind by or from the other party. **[HPEC] agrees that, as between it and City, it is not entitled to any damages (nor any other relief or compensation),** including but not limited to reliance damages for any actions it takes in connection with or relating to this Agreement, the Proposed Development and/or the Site, including but not limited to purchasing property in the area around or near to the Site."

SAC, Exh. C, Section 1(D) (emphasis added).  Moreover, Section 2 of the ENA provides: "Neither City, nor any board, officer or employee thereof, shall be liable in any manner to [HPEC] as a result of such termination."  *Id.* Exh. C, Section 2. Based on settled law and the plain language of Sections 1(D) and 2 of the ENA, HPEC is not entitled to **any** damages, whether consisting of lost profits, or amounts it allegedly expended in connection with the Project, or otherwise.

In addition, it is well-settled that "'[c]ontract damages are generally limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at that time; consequential damages beyond the expectation of the parties are not recoverable.  This limitation on available damages serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their

enterprise.'" *Erlich v. Menezes*, 21 Cal. 4th 543, 550 (1999) (internal citations omitted). HPEC cannot recover damages based on lost anticipated profits because they are not the kind of damages that would be expected to flow from the ENA (which was an agreement to negotiate and nothing more) and are speculative.

In the Recitals of the ENA, the parties agreed: "WHEREAS, this Agreement **shall not be construed as a direct or indirect commitment by City or any other entity to take or to not take any action**, . . . **and shall not guarantee final approval of the Proposed Development or any other proposed project related to the Site**." SAC, Exh. C, Recitals (emphasis added). The parties further agreed: "City and Developer agree that any development, permitting or other activities pertaining to the Site are **uncertain** and that the negotiations contemplated by this Agreement may or **may not result in a final permit or agreement or development**." *Id.* Section 1(C) (emphasis added). As a matter of law, HPEC is not entitled to damages for lost anticipated profits where, as here, the parties expressly agreed that the ultimate future of the Project was "uncertain."

Having failed to plead that it is entitled to any damages arising out of any of the alleged breaches of the ENA, HPEC has failed to state a claim for the breach of the ENA. HPEC's third claim for breach of contract arising out of alleged breaches of the ENA should be dismissed for this simple reason. Moreover, the claim should be dismissed without leave to amend because HPEC cannot allege any damages that would be permitted under the terms of the ENA.

### 2. HPEC has failed to state a claim that the City Defendants breached the ENA.

The third claim for breach of the ENA should be dismissed for the additional reason that HPEC has not alleged any breaches of the ENA. In Paragraph 235 of the SAC, HPEC alleges: "The Port breached the ENA's contractual requirements by, among other things, secretly negotiating and conspiring with the Union Defendants, attempting to coerce HPEC into giving the Union Defendants

10

exclusive jurisdiction over the intra-port drayage jobs at the Project, secretly negotiating with other parties to encumber the property and to develop alternative projects, failing to submit the Amendment . . . to the Los Angeles Board of Harbor Commissioners ("Board") and City Council for approval, and wrongfully terminating the Project."  In addition, HPEC asserts that the City Defendants breached the ENA by failing to disclose material facts.  SAC, ¶ 237.  None of the conduct alleged constitutes breaches of the ENA as a matter of law and/or such claims are factually unsupported.

As an initial point, in evaluating HPEC's SAC, it is important to note that the ENA terminated by its terms on July 5, 2017, at the earliest, or on January 5, 2018, at the latest, depending on whether HPEC properly exercised the option to extend the Exclusivity Period for an additional six months.  *Id.* Exh. C, Section 1(A).  Here, HPEC does not allege that it exercised the option per the terms of the ENA.  *See id.* ¶ 53.  Instead, HPEC only alleges that it "substantially satisfie[d]" the requirements of the ENA for exercising the option.  *See id.* ¶ 67.

The general rule in California is "that an option may be accepted or exercised only in strict compliance with its terms."  *Farina Focaccia & Cucina Italiana, LLC v. 700 Valencia St. LLC*, Nos. 15-cv-02286-JCS and 15-cv-04931 JCS, 2016 WL 5672961, at *9 (N.D. Cal. Oct. 2, 2016) (citation omitted).  It is well-established that "an option . . . constitutes an irrevocable offer that can be converted into an enforceable contract only by acceptance on the terms specified in the offer."  *Id.* (citing *Simons v. Young*, 93 Cal. App. 3d 170, 180 (1979)); *see also Palo Alto Town & Country Vill., Inc. v. BBTC Co.*, 11 Cal. 3d 494, 498 (1974) ("[W]hen the provisions of an option contract prescribe the particular manner in which the option is to be exercised, they must be strictly followed.").

Further, the "doctrine of substantial performance comes into play only when there exists a binding contract.  An option is but an offer which expires by its own

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

terms if it is not accepted within the time prescribed." *Bekins Moving & Storage Co. v. Prudential Ins. Co.*, 176 Cal. App. 3d 245, 250–51 (1985); *see also Renewable Land, LLC v. Rising Tree Wind Farm, LLC*, No. CV 12-0809 RT, 2013 WL 497628, at *1 (E.D. Cal. Feb. 7, 2013) ("Unless an option is properly exercised within the time specified, it expires and the optionee loses any rights it may have had under the option.").

It is the City Defendants' position that the ENA terminated on July 5, 2017, in which case **all** of HPEC's alleged breaches of the ENA fail because the alleged conduct occurred **after** the ENA terminated. *See Unified Dealer Grp. v. Tosco Corp.*, 16 F. Supp. 2d 1137, 1144 (N.D. Cal. 1998) ("[s]ince the agreement has expired there can be no breach of that agreement, including any implied obligations arising from that agreement."). However, HPEC's claims fail even if this Court finds that the ENA terminated on January 5, 2018 for purposes of this Motion, as we now explain.

a. ***HPEC cannot state a claim that the City Defendants breached the ENA by allegedly "secretly negotiating and conspiring with the Union Defendants" or by "attempting to coerce HPEC into giving the Union Defendants exclusive jurisdiction over the intra-port drayage jobs at the Project."***

The ENA provides, "[d]uring the Exclusivity Period, City shall not negotiate for a permit or any other entitlement, or for the development of the Site or any portion thereof, with any party other than Developer, or approve or conduct a public hearing for any other development of the Site or any portion thereof, or issue any request for proposal in connection with the Site or any portion thereof." SAC, Exh. C, Section 1(B). The allegations that the City Defendants "secretly negotiate[ed] and conspir[ed] with the Union Defendants" or "attempt[ed] to coerce HPEC into giving the Union Defendants exclusive jurisdiction over the

intra-port drayage jobs at the Project" are not breaches of the Section 1(B) of the ENA regarding exclusive negotiations.

Moreover, the SAC is entirely devoid of any factual allegations supporting HPEC's claim of the alleged "conspiracy" at the heart of HPEC's SAC.  In Paragraphs 105 through 112, HPEC alleges a number of communications and meetings beginning in September 2017 between the City Defendants and the Union Defendants that HPEC claims shows that the City Defendants conspired with the Union Defendants.  All of this conduct occurred after the ENA terminated on its own terms on July 5, 2017, and thus cannot constitute a breach of the ENA.  And, there are no facts alleged that would allow this Court to draw the reasonable inference that these communications were in furtherance of a conspiracy in violation of the ENA.[3]

For example, in Paragraph 105, HPEC alleges that on September 6, 2017, Executive Director Seroka emailed Deputy Executive Director DiBernardo about a dinner with officers of the Union Defendants regarding the LAXT Site.  But there are no facts alleged that supports HPEC's bald conclusion that this dinner was in furtherance of a conspiracy.

Likewise, HPEC's allegations that the City Defendants breached the ENA by "attempting to coerce HPEC into giving the Union Defendants exclusive jurisdiction over the intra-port drayage jobs at the Project" does not support HPEC's claim for breach of the ENA.  Paragraphs 119 through 148 allege conduct from April 11, 2018 through June 2018 regarding intra-port drayage jobs. However, **all** of the conduct alleged occurred **after** the ENA terminated even using the latest possible date of termination of January 5, 2018.

---

[3] In Paragraphs 160 through 178, HPEC alleges additional conduct by the City Defendants in furtherance of the alleged conspiracy between the City Defendants and the Union Defendants. But this conduct is alleged to have occurred in late 2018/early 2019—long after the ENA terminated on its own terms.

### b. *HPEC cannot state a claim that the City Defendants breached the ENA by allegedly "secretly negotiating with other parties to encumber the property and to develop alternative projects."*

HPEC's conclusory and unsupported assertion that the City Defendants breached the ENA by allegedly "secretly negotiating with other parties to encumber the property and to develop alternative projects" is also insufficient to sustain HPEC's claim that the City Defendants breached the ENA. The totality of the factual support for this claim is found in Paragraphs 15, 111, 154, and 167-168 of the SAC. However, none of these allegations indicate negotiations were taking place during the term of the ENA or in violation of the ENA.

For example, in Paragraph 111, HPEC alleges that "[o]n February 6, 2018, Vice President at Environmental Compliance Solutions, Inc. Tara Tisopulos wrote Deputy Executive Director DiBernardo as follows: '[T]he chassis pool element is a project alternative if there is full EIR. You can then select it as the preferred project if that's how they are leaning prior to the BHC [Board] hearing." But, by February 6, 2018, the ENA had already terminated by its own terms (even using the latest date by which the ENA terminated–January 5, 2018). And receipt of an email about an alternative project hardly constitutes "negotiat[ing] for a permit or any other entitlement" in any event. SAC, Exh. C, Section 1(B). There is no factual content alleged that would allow this Court to "draw the reasonable inference" that the City Defendants are liable for secret negotiations with others in violation of the ENA based on this email. *See Iqbal*, 556 U.S. at 678.

Similarly, in Paragraph 154, HPEC alleges that on June 25, 2018 "some Port staff members had a meeting to discuss 'project alternatives for HPEC.'" This alleged meeting occurred long after the ENA terminated, and an internal meeting about project alternatives hardly constitutes "secret negotiate[ions]" with other parties in violation of the ENA.

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

In Paragraphs 167 and 168 of the SAC, HPEC alleges that the City Defendants were "looking at developing a chassis yard project with Pacific Crane Maintenance Corporation ('PCMC'), a powerful ILWU ally" in December 2018 and into early 2019.  But, again, the ENA had already terminated by that time, and there are no factual allegations that "looking" at developing a chassis yard equated to "negotiations" about an alternative project in violation of the ENA.

In sum, all of the conduct that HPEC alleges constituted so-called "secret[] negotiat[ions] with other parties to encumber the property and to develop alternative projects" occurred after the ENA terminated by its own terms and/or fail to support any reasonable inference that the City Defendants were "negotiating" with third parties in violation of the ENA.

### c.    *HPEC cannot state a claim that City Defendants breached the ENA by allegedly "failing to submit the Amendment to the ENA to the Board and City Council for approval."*

HPEC cannot state a claim that the City Defendants breached the ENA by "failing to submit the Amendment . . . to the Board and City Council for approval" because the parties expressly agreed that the City Defendants had no obligation to do so.  Section 1(C) of the ENA provides: "City (including Board) **shall not be obligated or deemed obligated to take** or refrain from any action, including without limitation, . . . , **the approval of** . . . **any other agreement**, except as described in Section 1(B) above [the exclusivity provision]."  Plainly, there is no breach of the terms of the ENA based on the City Defendants' alleged failure "to submit the Amendment . . . to the Board and City Council for approval" because there was no contractual requirement to do so.  *A.B.C. Distrib. Co. v. Distillers Distrib. Corp*., 154 Cal. App. 2d 175, 185 (1957) (it is well settled that "[m]atters which were intentionally omitted from contract may not be added under the guise of interpretation."); *see also Alameda Cty. Flood Control & Water Conservation*

*Dist. v. Dep't of Water Res.*, 213 Cal. App. 4th 1163, 1190 (2013).  The City Defendants cannot be held liable for breaching the ENA by acting in accordance with its express terms.

> **d.    *HPEC cannot state a claim that City Defendants breached the ENA by allegedly "wrongfully terminating the Project."***

Section 1(A) of the ENA provided that it would continue "until **expiration** or earlier termination pursuant to Section 2 or 3 . . . ."  SAC, Exh. 3, Section 1(A) (emphasis added).  There was no earlier termination pursuant to Section 2 or 3; thus, the ENA terminated on its own terms on July 5, 2017, at the earliest, or January 5, 2018, at the latest.  Yet, HPEC nonsensically claims that the May 2019 termination breached the ENA.  It is elementary that a party cannot breach a contract that has expired because the contract no longer exists.  *See B.M. ex rel. R.M. v. Encinitas Union Sch. Dist.*, No. CIV 08CV412-L(JMA), 2009 WL 29652, at *3 (S.D. Cal. Jan. 5, 2009) (noting counterclaimant failed to state a breach of the agreement because any alleged breach after the agreement had expired was not actionable); *Advanced Thermal Scis. Corp v. Applied Materials Inc.*, No. SACV 07-01384-JVS (JWJx), 2008 WL 11338614, at *3, 6 (C.D. Cal. July 1, 2008) (granting motion to dismiss and explaining defendant could not have breached a provision in the contract because the provision only applied prior to the agreement's expiration: "ATS could not have breached the Agreement's 'Termination' provision by filing the Complaint, because the Agreement had already expired.").

Moreover, there can be no breach of the ENA for "wrongfully terminating the Project" because HPEC expressly agreed that there was no guarantee that the Project would ever be approved or finalized.  SAC, Exh. C, Recitals.  Indeed, the parties expressly agreed: "City and Developer agree that any development, permitting or other activities pertaining to the Site are **uncertain** and that the

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

negotiations contemplated by this Agreement may or **may not result in a final permit or agreement or development**." *Id.* Section 1(C) (emphasis added).

Finally, pursuant to Section 1(C) of the ENA (quoted above), the City Defendants were not obligated or deemed obligated to take or refrain from any action. The City Defendants had the right to terminate the Project in accordance with Section 2 of the ENA, or to allow the ENA to terminate by its own terms. The latter occurred. There can be no breach of the ENA for acting in accordance with the plain terms of the ENA.

        **e.**    *HPEC cannot state a claim that City Defendants breached the ENA by allegedly "failing to disclose material facts."*

In Paragraph 237, HPEC alleges that the City Defendants breached the ENA by "failing to disclose material facts." What HPEC's allegation comes down to, however, is that the City Defendants did not disclose the conduct that HPEC alleges breached the ENA. For example, HPEC alleges, "the Port failed to disclose that it would require the ILWU's approval for the Project before HPEC would be allowed to run its pilot study and it would terminate the Project based on objections from the ILWU." But, as discussed above, there are no allegations in the SAC that this alleged conduct—this so-called "conspiracy"—occurred before the ENA terminated on its own terms or that the alleged conduct supports a reasonable inference that such a conspiracy even existed while the ENA was in effect.

HPEC further alleges that "[t]he Port also failed to disclose prior to the expiration of the original ENA that it had failed to submit the Amendment to the Board to be acted upon." But the parties expressly agreed that the ENA would terminate on its own and that City was "not obligated or deemed obligated to" seek approval of any agreement, including the Amendment.

HPEC also alleges that "[a]lthough the Port represented to HPEC and

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND
AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

Macquarie that it was supportive of the Project and knew that they believed that the Amendment to the ENA had been properly approved and was valid, the Port waited to disclose to them that it had failed to have the Board properly approve the Amendment . . . until after the closing of Macquarie's investment." But this alleged conduct, even if true, cannot constitute a breach of the ENA because it occurred after the ENA terminated (*see* SAC, ¶¶ 101-102), and HPEC was deemed as a matter of law to know the requirements of legal approvals. *See, e.g., Amelco Elec. v. City of Thousand Oaks*, 27 Cal. 4th 228, 242 (2002); *G.L. Mezzetta, Inc. v. City of American Canyon*, 78 Cal. App. 4th 1087, 1093-94 (2000). HPEC was presumed to know that a contract such as the Amendment required Board and City Council approval because it had an indefinite term. HPEC also was bound, as a matter of law, to know that a contract that fails to comply with Charter provisions is unenforceable. *First Street Plaza Partners v. City of Los Angeles*, 65 Cal. App. 4th 650, 655 (1998); *LA Equestrian Ctr., Inc. v. City of Los Angeles*, 17 Cal. App. 4th 432, 449 (1993). HPEC may not blame the City for not telling HPEC that the Amendment had not been validly approved when it entered into a deal with Macquarie, because HPEC was bound as a matter of law to know that the Amendment was unenforceable because it had not been validly approved. Indeed, as the Court noted in its November 2, 2020 Order, "HPEC's reliance arguments lack merit because the plain language of the contract expressly requires City Council's approval." Order, at 25.

### f.   *HPEC also cannot state a claim that City Defendants breached the express provision in the ENA requiring good faith negotiations.*

The conduct alleged in Paragraphs 235 and 237 discussed herein also cannot constitute a claim for breach of the express provision in the ENA requiring that the parties negotiate in good faith for all of the reasons set forth above and below.

HPEC has failed to state a claim for breach of the ENA.  HPEC's claims based on the ENA should be dismissed without leave to amend.

### C.   HPEC's Fourth Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Does Not State a Claim for Relief Arising out of the ENA.

Under California law, the implied covenant of good faith and fair dealing exists in every contract "merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*."  *Lowry v. Sw. Airlines Co.*, No. SACV 15-00500-CJC (DFMx), 2015 U.S. Dist. LEXIS 182228, at *17 (C.D. Cal. Aug. 10, 2015) (quoting *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349 (2000)) (emphasis in original).  It is well-settled that a "breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself."  *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1394 (1990).  "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seeks the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."  *Id*. at 1395; *accord In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010).

HPEC's breach of the implied covenant of good faith and fair dealing claim fails because it is based on the **same** conduct that HPEC alleges breached the ENA; namely, that the City Defendants: (i) failed to negotiate in good faith, (ii) conspired with the Union Defendants, (iii) imposed an illegal ILWU exclusivity requirement, (iv) wrongfully terminated HPEC's rights in the Project, (v) negotiated with other developers regarding use of Project sites, and (vi) failed to disclose material facts.  SAC, ¶¶ 235, 237, cf. ¶ 244.  HPEC's breach of the implied covenant claim and breach of the ENA claim also seeks the **same**

damages.  *Id.* ¶ 239, cf. ¶ 246.  The Court should dismiss HPEC's breach of the implied covenant claim as superfluous.

Moreover, because HPEC's breach of the implied covenant claim is based on the same conduct as its claim for breach of the ENA, the claim fails for the same reasons discussed above.

First, the ENA expressly limits HPEC's damages.  *Id.* Exh. C, Section 1(D).

Second, much of the alleged misconduct occurred **after** the ENA terminated by its terms.  It is well-settled that the implied covenant of good faith and fair dealing "'is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (the implied covenant neither "'alter[s] specific obligations set forth in the contract' nor 'add[s] duties independent of the contractual relationship.'. . ."); *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992) ("It is universally recognized the scope of conduct prohibited by the covenant of good faith is circumscribed by the purposes and express terms of the contract.").  HPEC may not extend the term of the ENA by invoking the implied covenant of good faith and fair dealing.

Finally, the alleged conduct cannot constitute a breach of the implied covenant because it was expressly permitted by the ENA, or the SAC fails to plead facts that would permit this Court to draw the reasonable inference that the City Defendants are liable for the misconduct alleged.  *Carma Devs. (Cal.), Inc.*, 2 Cal. 4th at 374 ("As to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct.").  For example, the City Defendants cannot be liable for terminating the Project or failing to present the Amendment to the Board or the City Council because the parties agreed that the ENA would terminate on its own and that the City Defendants were "not obligated or deemed obligated to" seek

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

approval of any agreement, including the Amendment.  To find otherwise would conflict with the rule that "Courts have been careful not to rewrite contracts for parties by inserting an implied provision, unless, from the language employed, such implied provision is necessary to carry out the intention of the parties.  No implied condition can be inserted as against the express terms of the contract or to supply a covenant upon which [the contract] was intentionally silent."  *Foley v. Euless*, 214 Cal. 506, 511 (1931).

Here, the clear intention of the parties as evidenced by the plain and explicit language of the ENA was to grant them the "exclusive right to negotiate regarding the possible development and operation of the Site" for a specific period.  SAC, Exh. C, Section 1(A).  Contrary to HPEC's claims, the ENA <u>expressly</u> did not entitle HPEC to (i) an indefinite term of negotiations, (ii) the approval or completion of the Project, or (iii) damages for amounts it expended in connection with the Project or for lost anticipated profits when the Project did not come to fruition.  HPEC may not rewrite the ENA through a claim for breach of the implied covenant.  HPEC's claim for breach of the implied covenant of good faith and fair dealing should dismissed, without leave to amend, to the extent that it is based on the ENA.

### D.     HPEC's Fifth Claim for Declaratory Relief Does Not State a Claim for Relief.

A request for declaratory judgment cannot be used to bypass Article III's requirements; a federal court has jurisdiction to award declaratory relief only where a true case or controversy exists.  *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).  In other words, a claim for declaratory judgment is justiciable only when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

HPEC asserts that there is an "actual and present controversy between the parties" over (1) the validity and enforceability of the Amendment, and (2) the validity of the "Port's May 2019 termination of . . . [HPEC's] rights in the Project." SAC, ¶ 248. HPEC is wrong. HPEC has failed to state a claim for declaratory relief because, as a matter of law, the Amendment is invalid and unenforceable and HPEC had no rights in the Project as of May 2019.

This Court was unambiguous in its November 2, 2020 Order: "**the Court finds that the Amendment was ineffective**." Order, at 26 (emphasis added). HPEC may not resurrect its allegations regarding the Amendment's validity by flouting this Court's November 2, 2020 Order. The Court already engaged in a thoughtful (and correct) analysis in this regard (Order, at 25), and there is no change in the facts or law that would warrant revisiting the Court's holding. The plain language of the Amendment demonstrates that the express approval requirements were never met. *See* Order, at 25. HPEC's reliance arguments lack merit because the plain language of the Amendment expressly requires the City Council's approval, and HPEC could not have reasonably concluded that the City Defendants' actions indicated the Amendment had been approved. *Id*. There is no "actual and present controversy between the parties" over the validity of the Amendment.

There also is no "actual and present controversy between the parties" regarding the validity of the May 2019 termination. In Paragraph 180 of the SAC, HPEC alleges: "[i]n a May 10, 2019 letter, Executive Director Seroka purported to terminate the ENA, the MOUs and the Indemnity Agreement, as well as HPEC's rights in the Project on the false pretense that the Port had purportedly 'determined the proposed [P]roject to be infeasible.'" HPEC claims that this termination was invalid. In fact, the termination was irrelevant because, by that point, HPEC had no remaining rights in the Project.

First, as discussed above, by May 2019, HPEC had no remaining rights in the Project based on the ENA because it had terminated by its terms on July 5, 2017, at the earliest, or, at the latest, on January 5, 2018 (assuming *arguendo* that HPEC properly exercised the six month option).

Second, HPEC had no remaining rights in the Project based on the Amendment because, as this Court held, the Amendment was ineffective. Order, at 25-26.

Third, HPEC had no remaining rights in the Project based on the MOUs because, as this Court held, "explicit language in the MOUs indicates that these documents were unenforceable." Order, at 26.

Finally, HPEC had no rights in the Project based on the Indemnification Agreement based on its explicit language:

> [HPEC] and City expressly acknowledge and agree that this Agreement does not grant Applicant or City any right or obligation to enter into any other binding agreement or amendment . . . relative to the design, engineering, construction, development, operation, or lease related to the proposed Project, does not obligate the City to take any action to adopt or approve the CEQA document or to approve the proposed Project, or any lease, permit or entitlement related to the proposed Project. The proposed Project shall be subject to the discretionary review and approval of all underlying entitlements and approvals to the extent required by the law and by City's unfettered discretion to make decisions regarding the proposed Project, including but not limited to: . . . whether or not to approve the proposed Project . . . .

SAC, Exh. G, Section 2.

HPEC's declaratory relief claim should be dismissed in its entirety because HPEC has failed to allege an "actual and present controversy between the parties." Moreover, leave to amend should be denied to the extent HPEC seeks to amend its declaratory relief claim in order to revive its claims based on the invalid Amendment or to challenge the validity of the termination of HPEC's rights in the Project.

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

### E.   HPEC's Breach of Contract and Breach of the Implied Covenant Claims Should be Dismissed to the Extent they Conflict with this Court's November 2, 2020 Order.

As mentioned above, this Court already analyzed the validity and enforceability of the Amendment and the MOUs (Order, at 25-26), and there is no change in the facts or law that would warrant revisiting the Court's holding. Nevertheless, in its breach of contract and breach of the implied covenant claims, HPEC appears to try to improperly resurrect claims based on the invalid Amendment and the unenforceable MOUs.  SAC, ¶¶ 232, 241-245 (*see, e.g.*, ¶ 244, lines 21-23: "and to deprive HPEC of the benefits of the ENA, **the Amendment, the MOUs** and the Permit."  (Emphasis added).[4]

As this Court held, the Amendment was "ineffective" and MOUs were "unenforceable."  Order, at 25-26.  Yet, to establish a breach of contract, there must be a valid contract.  And, "[t]o establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract."  *Fortaleza v. PNC Fin. Servs. Grp., Inc.,* 642 F. Supp. 2d 1012, 1021–22 (N.D. Cal. 2009) (citing *Racine & Laramie v Dep't of Parks & Rec.,* 11 Cal. App. 4th 1026, 1031 (1992)).  HPEC cannot state a claim for breach of contract or breach of the implied covenant of the Amendment and MOUs because HPEC cannot establish the existence of a contractual obligation arising out of the Amendment or the MOUs.  The City Defendants respectfully request that the Court dismiss all claims based on the invalid Amendment and unenforceable MOUs without leave to amend.

---

[4] Throughout the SAC, HPEC alleges that the Amendment and MOUs were valid or enforceable contrary to this Court's November 2, 2020 Order: Paragraphs 63-67, 69, 71-73, 102, and 241-242.

CITY DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

57804480.v3

**F.     HPEC'S Third and Fourth Claims Based on the ENA, Amendment, and MOUs, and its Fifth Claim, Should be Dismissed with Prejudice.**

Federal Rule of Civil Procedure 41(a) provides that the Court may dismiss HPEC's SAC "on terms that the court considers proper."  In determining whether leave to amend is warranted, the Court considers a party's bad faith; undue delay; prejudice to the opposing party; futility; and whether the plaintiff has previously amended his complaint.  *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996).

HPEC has already filed three inadequate complaints, even after ample state court discovery.  HPEC should not get a <u>fourth</u> bite at the apple.  The Port produced over 25,000 documents, and HPEC has still failed to state any plausible claim for relief based on the ENA.  HPEC cannot correct its pleadings: as a matter of law, the relevant contracts were not breached and offer HPEC no remedy in any event.  Under these circumstances, dismissal with prejudice is most appropriate. Any possible amendment would be futile, and a fourth round of burdensome motions with the same result would significantly prejudice the City Defendants.

**V.     CONCLUSION.**

For all of the foregoing reasons, the City Defendants respectfully request that the Court grant this Motion to Dismiss portions of the third and fourth claims, and the entire fifth claim, against City Defendants.

Dated: January 11, 2021

NOSSAMAN LLP
DAVID GRAELER
JENNIFER L. MEEKER
GABRIELA S. PEREZ


By:  _____*/s/David Graeler*_____
             David Graeler

Attorneys for Defendants, CITY OF LOS ANGELES HARBOR DEPARTMENT and CITY OF LOS ANGELES

25

1

## **CERTIFICATE OF SERVICE**

2          Pursuant to Rule 5-3 of the Local Civil Rules of the United States District

3     Court for the Central District of California, I hereby certify under penalty of

4     perjury under the laws of the United States of America that on the below date, a

5     true copy of the above document was filed through the Court's Case Management /

6     Electronic Case Filing system and served by that system upon all counsel of record

7     registered for the System and deemed to have consented to electronic service in the

8     above-captioned case.

9

10    Dated:  January 11, 2021                    NOSSAMAN LLP

11                                                DAVID GRAELER
                                                  JENNIFER L. MEEKER
12                                                GABRIELA S. PEREZ

13

14                                                By: _____*/s/David Graeler*_____
                                                           David Graeler
15
                                                  Attorneys for Defendants, CITY OF LOS
16                                                ANGELES HARBOR DEPARTMENT and
                                                  CITY OF LOS ANGELES

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

57804480.v3